Stewart, J.
This is a petition in error to reverse a judgment of the court of common pleas, rendered in a proceeding there instituted against the plaintiff in error for contempt.
The complaint filed is as follows
“ This day came J. T. Holmes, one of the attorneys of said court, specially appointed by the court herein to file and prosecute this information, and complains to the court that on the 25 th day of February, A. D. 1888, said defendant Frederick Steube, one of the witnesses for the defendant in the case of the state of Ohio against, Robert B. Montgomery, pending and then and still on trial in this court, during a recess in said trial, did on High street, in the city of Columbus, within said county ■ of Franklin and state of Ohio, unlawfully and wrongfully assault, strike, wound and thereby disable from proceeding with the trial of said cause of the State of Ohio against Montgomery, one Cyrus Huling, the duly elected, qualified and acting prosecuting attorney within and for said county and one of the'officers of this court, theretofore and then engaged in conducting the trial of said cause on behalf of the state of Ohio; said assault, striking, wounding and disabling being so made and done, by said Frederick Steube, in the presence of the court, with the intent then and thereby to obstruct the administation of justice in said cause; and said Frederick Steube was then and there and thereby guilty of obstructing the administration of justice, and of contempt of this court contrary to the statute in such cases made and provided.”
To this complaint a demurrer was filed, which was overruled, and it is claimed the court erred in this. We are of the opinion that the demurrer was not well taken, and indeed no serious objection is urged to the complaint except that it was not sworn to. Practice in other states may require affidavits to be filed in proceedings in contempt, but in this state, if in a case of this kind any complaint at all is necessary, which we do not decide, this was sufficient.
An examination of the statute of 1834 (Swan’s Statutes of 1841, p. 211), and comparing it with the present statute, wóúld seem to show that no complaint is necessary;
*385 The defendant then filed the following answer : .
“ Now comes the defendant Frederick Steube, and for his answer to the information filed herein against him says: He denies that in manner or form whatever he did obstruct the said court as in said information charged; he says that he did not in the presence of said court, or in the presence of any judge thereof at Chambers, nor so near said court or any judge thereof, whilst performing judicial function's at Chambers, misbehave himself so as to obstruct the administration of justice by said court or by any judge thereof at Chambers. Defendant further answering says that the said court on Friday, the 24th day of February, 1888, adjourned at 4 o’clock, P. M., to meet on Saturday, the 25th day of February, 1888, at 10 o’clock, A. M.; that a juror in the said cause mentioned in said information being absent on said Saturday, the court adjourned on said Saturday morning until Monday morning the 27th daj' of February, 1888, at 10 o’clock A. M., and discharged the jury until said Monday morning after giving them the customary charge as to their behavior in criminal causes as required by statute; that on the 25th day of February, 1888, at about 5 o’clock in the afternoon, in.front of the Neil house of the said city of Columbus, at the distance of about two-thirds of a mile from the court house where the court had been meeting in the trial of said canse mentioned in said information, the defendant met the said Cyrus Huling, and then and there had with him a personal altercation which resulted in the use of violence by each and both of . them, towards and against each other. The defendant says that in the course of said controversy he did strike with his fist the said Huling, and was struck by said Huling; and he, this defendant, then passed away from the scene of the conflict. The defendant says that said altercation had its origin in matters wholly unconnected with the said cause of the State of Ohio v. Robert Montgomery, or any incident, fact or declaration occurring in or connected with said trial, or arising out of any act, word,.declaration or conduct of said Cyrus Huling as an attorney for the state in the conduct of said trial. Defendant says that said alterca *386 tion arose from differences wholly and' entirely personal between him and said Huling, and that the grievances complained of in said information arose from the personal difficulties between him and said Huling, and from no other difficulties whatever. This defendant disclaims, and denies, that in all he then and there did he had any intention whatever to obstruct the administration of justice in said criminal cause, or commit a contempt against the authority or dignity of sa‘id court or any judge at chambers thereof, or, that he, the defendant intended thereby to show any disrespect to said court, or any judge thereof sitting at chambers; and this defendant denies that he did so obstruct or commit any contempt of said court, or a judge thereof at chambers, contrary to the statute in such case made and provided.”
The gist of this answer is, that his assault upon Mr. Huling was the result of a personal difficulty wholly unconnected with the case of the State of Ohio v. Robert B. Montgomery ; that it occurred two-thirds of a mile from the court house, after the court had adjourned, and that he had no intention of obstructing-the administration of justice or committing a contempt of court. This answer was sworn to upon belief. Upon a hearing the defendant w.as adjudged guilty, and fined $25.00 and sentenced to imprisonment in the county jail for four months.
This proceeding is to reverse that judgment. The facts in the case, as shown by the bill of exceptions,' are as follows: The case of The State v. Robert B. Montgomery, for forging the Thirteenth ward, precinct A, tally sheet, had been on trial for about a month before Judge D. F. Pugh. Mr. Huling, as prosecuting attorney, had the management of the case, and, although assisted by other counsel, alone knew the details of the evidence, and without his presence and advice the state could not proceed. The plaintiff in error had been in attendance almost constantly upon the trial, sitting with the defendant and his counsel, and knew the course and progress of the evidence and trial on the 25th day of February, 1888, and had testified prior to that time on behalf of the defendant. The history of the altering and tampering with the Ninth ward, precinct B, tally sheet, for which Steube was indicted with *387 Montgomery, had been given in evidence to the jury, as Steube knew. On that date the court adjourned the trial of the cause at 3 o’clock until 10 o’clock on Monday. About 5 o’clock that afternoon, in front of the Neil house, about one-half mile from the court house, Mr. Huling was standing talking to some gentlemen. He stood with his hands in his pockets and his umbrella under his arm. In the Neil house lobby Steube was engaged in animated conversation with the defendant, Robert B. Montgomery, who had just had an altercation with some one in or near this place. He was very much excited, and after pacing the floor awhile took off his coat and threw it over his arm. Then he, in company with Montgomery, went out on the sidewalk, and, hesitating a moment, walked up to Mr. Huling and demanded of him why he did not keep his detectives from following him. Mr. Huling replied that he did not know that any were following him, and thereupon Steube made a brutal and unprovoked assault upon Mr. Huling, and immediately thereafter Steube walked off in company with Montgomery. This assault produced injuries which incapacitated Mr. Huling from attending court on Monday, and the trial of the case, The State v. Montgomery, could not proceed.
Steube offered no testimony in his own behalf. There is evidence that the attack was deliberate and premeditated, and the claim in his answer that it was a personal altercation was wholly unfounded. It is clear that if Mr. Huling had not been prosecuting attorney and engaged in the trial of the tally sheet case, no assault upon him would have been committed, and that Steube had not before that day made up his mind that the law (which it does not appear he had appealed to) would not protect him from acts done by Mr. Huling long prior thereto. It is claimed on his behalf that he did not intend to obstruct the administration of justice by his assault upon Mr. Huling, and that the evidence fails to show any such intention. Treating this as a proceeding under section 5639,. which in our judgment is but declaratory of thecommon law, it is not necessary to aver or prove intent. Whoever by misconduct obstructs the administration of justice does so at his peril, and is guilty of contempt. It is clear that this as *388 sault delayed the trial of the case then on hearing, and having attacked an officer of the court who is under its protection, he thereby did an act the natural tendency of which was to obstruct and degrade the administration of justice.
In the states of New York and Illinois.it has been decided that it is contempt of court for a man to give what is known as a straw bond in a pending case, for the reason that it obstructs the administration of justice.
It is claimed in his behalf that his answer purges him of the contempt, and that in the absence of a reply it must be taken as true. As already intimated we do not think this a .case in which pleadings are necessary or to which the rules of pleading are applicable, and in view of the evidence in the case showing the falsity of his answer, we think it could only be regarded as aggravating the contempt.
It is further claimed that because Revised Statutes, section 6907, might be held to apply to a case like this and a provision has bpen made therein for a criminal prosecution for such offenses as charged in this complaint, that the remedy ¡provided in section 6907 is exclusive.
It is admitted that under Revised Statutes, section 5639, an abuse of a judge in the execution of his duties as such might be punished summarily for contempt, and yet Revised Statutes, section 6908, provides for a criminal prosecution for that ■offense.
These are punishments provided by statute for the injury done to the “ man ” who holds the office at the time the offense is committed, and are separate and distinct from the offense committed against the court as the administrator of justice, and the power to punish by indictment and trial can in no way^abridge the right of the court to protect itself by summary proceedings for contempt, and the|legislature has provided for both cases.
The case of U. S. v. Emerson, 4 Cranch, 188, shows that punishment for contempt, and upon conviction under indictment, were both inflicted.
Again, it is claimed that the law nowhere protects an attor-,ney, by authorizing or recognizing his right to proceed as .for contempt against an assailant in a proper case. Without *389 calling attention to the numerous authorities' in which this-right is conceded, the following from the case of Neel v. State, 4 Eng. (9 Ark.) 268, in a review of the authorities on the subject of contempt, states the law fairly and fully. In this case the claim was made that a court could not protect itself:
“ It is clear that the common law not only deemed it necessary to defend the citadel of justice itself from every inva-. sion, that, while it might strike at the purity of judicial institutions, would assail with no less violence, the frame of so-ciety itself; but deemed it also necessary to defend even the approaches, outworks, and barriers, of the judicial authority, in order to give the fullest effect to its legitimate acts. And it was, therefore, not only when the course of justice was wilfully and visibly obstructed, that.judicial animadversion was' called forth, but in numerous other cases, when it was supposed that the general authority and efficacy of the court was, to some extent, impaired, and its dignity lessened, and that, too, in some cases, by inferences remote and far-fetched, which cannot be defended but by the consideration that the paramount interest of society requires that the course of public justice should be made to flow like a mighty river, cleared of every obstruction, permanent or temporary, however slight. When, therefore, the common law deemed it so necessary, for this great purpose, to protect the juror, the witness,. the informer, the party, the jailer, the attorney, and other persons, many of whom might never again be called into a court of justice, it was not to be expected that it would fail to cover, with its complete armor, the presiding minister of the law’s-majesty, who would be so often exposed to similar trials.”
It is as an officer of the court, and not as an attorney, that he is entitled to protection. This power in a court to punish for contempt, which consisted of an assault upon a solicitor, is fully recognized and clearly stated in the case of In re Johnson, 20 Q. B. 68.
It is claimed that we cannot be governed in this state by the common law on the subject of contempt, for the reason that-our courts have no common law jurisdiction. Winn v. State, 10 Ohio, 345; Sovereign v. State, 4 Ohio St. 489. It is true.that in Ohio the common law is adopted only so far as adapted to *390 our circumstances. 1 Ohio, 248; 15 Ohio, 559; 3 Ohio St. 172; 19 Ohio St. 462.
It is equally true, that as to crimes and offenses the common ■ law never was in force in Ohio. 10 Ohio, 345; 12 Ohio St. 466.
But it is just as well settled that where legal words are used in a statute, we are to understand them in the recognized legal sense, and adopting the common law definition of a crime, is adopting the settled construction of the definition. Ranney, J., Turner v. State, 1 Ohio St. 422-425.
And so, in construing this statute, we must hold that the word “ contempt ” was used advisedly by the legislature, and in its recognized legal sense as defined by the common law. And this we may do, giving full force and effect to the statute, although it has been held in' Ohio (Spinning v. Trust Co., 2 Disney, 354-367,) that the power to punish for contempt is not given by the statute, but is inherent in the courts themselves.
It is clear that the plaintiff in error was guilty of misbehavior, which did obstruct the administration of justice, and it only remains to determine what is meant by the words “ in the presence of the court, or so near thereto, etc.”
We have not deemed it necessary to consider the question whether a court has power to punish for a contempt, for it is admitted that it is a power inherent in the court, and necessary for its own protection. It is claimed on the one side that the legislature may abridge that power, and on the other, that it cannot. It is sufficient in this connection to say, that we do not think the legislature has attempted in this state to abridge the power.
It is claimed by plaintiff in error, that “ misbehavior in the presence of the court, or so near thereto, etc.,” means misbehavior while the court is in session, and so close thereto that there is a possibility of the court hearing the affray. In the state of Iowa the code provides for the punishment of a person guilty of “ contemptuous or insolent behavior toward the court while engaged in the discharge of a judicial duty, which may tend to impair the respect due to its authority.” Under that language of the statute, it was held in the case of Dunham v. State, 6 Iowa, 245, that such act or behavior must be in the *391 actual or constructive .presence of the court, but it need not •be in the court-room under the eye of the court. That it appears from the testimony in this case that the court was not actually in session, is not a material matter, in view of the decision in the case of U. S. v. Patterson, 26 Fed. Rep., 509.
We think the view taken of the statute by the counsel for plaintiff in error is too narrow. .Whatever acts are calculated to impede, embarrass or obstruct the court in the administration of justice, are considered as done in the presence of the court.
Numerous authorities have been cited to show that acts committed in the presence of the court may be punished as contempts. There can be no question about this; but that the principle which we have above announced, is sound and applicable in this case, considering it as undér our statute, is shown in the well-considered cases of Stuart v. People, 3 Scammon, 395, People v. Wilson, 64 Ill., 196.
This assault by plaintiff in error was, in the contemplation of law, in the presence of the court, and being calculated to and actually obstructing the administration of justice, was a contempt of court. It is also claimed that the punishment is excessive, for the reason that by section 5645 of the Rev. Stats, the punishment is limited to a fine not exceeding $500, or imprisonment not more than ten days, or both, whereas the punishment inflicted here was four months imprisonment and $25 fine. It is clear that section 5645 of Rev. Stats, has reference to proceedings under section 5640 of Rev. Stats., and not to those under section 5639 of Rev. Stats.
"\ye have thus gone over this whole case, and examined the questions made therein as if the case had been submitted upon its merits, and without referring to all the authorities, have given a summary of our views, for the reason that counsel have argued the case in all its aspects; and if the case was now to be decided, we would affirm the judgment. But it was also necessary for us to examine it fully upon the question which counsel for plaintiff in error claim is the only matter to be considered by us, and that is an application for the fixing of a bond to stay execution of-sentence. The section under which this application is made is section 5649 of Rev. Stats., which reads as follows:
*392 “The judgment and orders of a court or officer made in cases of contempt may be reviewed on errof; but proceed-, ings in error therein shall not suspend execution of the order ■ or judgment until there is filed by the person in contempt, in the court rendering the judgment, or in the court or before the officer making the order, an undertaking payable to the 'state of Ohio, with sureties to the acceptance of the clerk of that court, in an amount fixed by the reviewing court or a judge thereof, conditioned that if judgment be given against him he will abide and perform the order or judgment.”
It is claimed on behalf of plaintiff in error that this section is mandatory, and this court has no discretion but to fix the amount of the bond. There are other statutes which regulate the stay of execution in cases heard on error in a reviewing court. In criminal cases we have sections 7361, 7362, and 7363, of Rev. Stats.; in civil cases, sections 6718 and 6725, of Rev. Stats.
We have no adjudications as to the method of procedure under section 5649 of Rev. Stats., but it should be construed so as to give effect to its provisions reasonably and in accordance with the evident intention,of the legislature. In a criminal case, where a man’s life is at stake, the statute provides that stay shall not be granted except for good cause shown. And although it might be, in the language of Judge Johnson, in Webster v. State, 43 Ohio St. 701, anomalous to hang a man and then hear his case afterwards, yet that power is vested by the legislature in^the courts, by section 7362 of Rev. Stats. There is in this case something required in addition to that required in criminal cases except in cases of misdemeanors. The order of a judge or a court in a case of this kind cannot stay execution of sentence ; it is the bond which does that. Some light may be obtained by an examination of the following section having a similar purpose:
“Sec. 6725, Rev. Stats. Execution,of a judgment or final order, other than those enumerated in this chapter, of any judicial tribunal, or the levy or collection of any tax or assessment therein litigated, may be stayed on such terms as may be prescribed by the court in which the petition in error is filed, or by a judge thereof.”
J. A. Miles and J. II. Heitmann, for plaintiff. '
J. T. Holmes, for defendant.
Applying to this» section the rule of construction claimed for section 5649 of the Revised Statutes, all that is required is-for the court to prescribe the terms, and on complying with, them the judgment, etc., will be stayed.
In the case of Building Ass’n v. Ins. Co., 34 Ohio St. 291, application was made for a stay of judgment under this section as of right. Boynton, J., in deciding the case, says at p. 293-of the opinion :
“Power to stay execution of the judgment or order, as provided by section 22 (no.w section 6725), is discretionary, to be-exercised only on good cause shovm by the party moving the stay. Counsel for plaintiff seem to assume that the mere pendency of the petition in error in this court, the hearing upon which may result in the reversal of the judgment of the district court and in the affirmance of the judgment of the court of common pleas, is a sufficient ground to stay further proceedings in the latter court until the petition in error is disposed of. If this-were so, the result would be in this class of cases, that on the filing of the petition in error in the reviewing court, stay would be ordered, as-of course, however clear and manifest it might be that the judgment of the district court was right.”
We think what is said by Judge Boynton in that case is applicable to the case at bar, with the addition that an inspection of the record shows that we are asked to suspend the execution of a judgment which we find to be clearly right. There can be but one result to follow, and that is we decline-to fix the bond as there appears no good cause for the stay.