On notices issued, the court heard the evidence submitted on affidavits; made full and pertinent findings of fact, which are spread upon the record, and thereupon adjudged defendant guilty of contempt and imposed a fine and imprisonment.
Defendant excepted and appealed.
It appears from the findings of fact which accompany the case on appeal and are a part of it that, at the criminal term aforesaid, indictments were pending against defendant for illegal traffic in spirituous liquors and that a brother of defendant, Hector Little, was also indicted for similar offenses, and that a principal witness against these defendants was one W. E. Reynolds; that on Tuesday night of the term about 9 P. M., before the trial of the cases, at a cafe in the town of Rockingham, near the court house and near the hotel where the judge was staying, the said witness was violently assaulted and severely injured by the present defendant as the witness was endeavoring to go from the cafe to his boarding house, the brother Hector and a young man named Morgan, who was driving the car of defendant, being the only persons present at the time.
In regard to the person actually guilty of the assault, the purpose and motives prompting the same and some of the circumstances incident to the enquiry, the findings of the court are as follows:
From all the evidence the court finds as a fact that the defendant Little is the person who assaulted Reynolds, who was a witness against him; and the court also finds as a fact that his object and purpose was to defeat or impair and prejudice and delay the rights and remedies of the State in the indictments against him in which Reynolds was witness against him, and the court finds, also, the fact that his acts and conduct did tend to impede and hinder and interfere with the rights and remedies of the State and caused the court to (745) delay in the transaction of the business at this term of the court, and to impair the respect and authority for the proceedings of this court. That after respondent made the assault on Reynolds, during the term, respondent was tried in two of the cases against him, and was convicted and sentenced in one case and acquitted in one, and two others were continued. His brother, Hector Little, was tried in one case for retailing, also, and was convicted and sentenced. Reynolds was a witness against both of them. *Page 789 
"The court finds that the defendant has been guilty of contempt of the court and of its lawful orders, process, and proceedings, and it so adjudges respondent to be in contempt of court and adjudges that he pay a fine of $100 and that he be imprisoned in the county jail for a period of thirty days."
There was ample evidence to support such findings, and we are of opinion that the court correctly adjudged the defendant guilty of direct contempt and administered summary punishment for the offense.
It is thus far understood and has been not infrequently decided that our statute, Revisal, ch. 17, secs. 939-945, inclusive, regulating proceedings "for contempt and as for contempt," purports to confer on the courts all the inherent powers to attach for contempt that were recognized by the common law as essential to the due and orderly exercise of their jurisdiction and functions. In re Brown, 168 N.C. 417; Ex parte McCown,139 N.C. 95; Ex parte Schenck, 65 N.C. 366.
And in McCown's case, supra, it is held that "The provision of section 939 of said chapter, subsecs. 1 and 3; Code of 1883, sec. 648, were broad enough to extend to and include, and did include, all cases of disorderly conduct, breaches of the peace, noise, or other disturbance near enough and designed and reasonably calculated to interrupt the proceedings of a court then engaged in the administration of the State's justice and the dispatch of business presently before it."
McCown's case was one where a citizen, angered because he considered a sentence just imposed upon a prisoner convicted of manslaughter was too light, for that reason made an assault on the presiding judge at his hotel during a recess of the court and before adjournment. The judgment, imposing summary punishment for contempt, was upheld, not so much because the assault was made on the person of the judge, but because, on the facts presented, it was a breach of the peace designed and calculated to impede, embarrass, and obstruct the present administration of the State's justice in causes then pending before the court and a perusal of that well-considered case and many of the authorities cited will show that the position extends its protection to all officers of the court, jurors, attorneys, and others who in the line of official duty are assisting the court in the present dispatch of its business and to all witnesses who are in attendance under subpoenas to give evidence in causes pending before it. S. v. (746)Moore, 146 N.C. 653; In re Gorham, 129 N.C. 481; In re Deaton,105 N.C. 59; S. v. Mott, 49 N.C. 449; Ex parte Summers, 27 N.C. 149;Commonwealth v. Dandridge, 2 Va. Cases, 408; Cartwright's case,114 Mass. 230; S. v. Steube, 3 Ohio C.C. 383; In re Healy, 53 Vt. 694;People v. Wilson, 64 Ill. 195; Ex parte McLeod, 120 F. 130; U.S.v. Anonymous, 21 F. 761; U.S. v. Patterson, 26 F. 509; Ex parte *Page 790 King, 7 Vesey 315; Ex parte Barrow, 8 Vesey 535; Williams v. Johns., 2 Dickens 477.
Thus in U.S. v. Patterson, case of an assault on an attorney, Hammond,J., said: "The principle protects parties, jurors, witnesses, the officers of the court and all engaged in and about the business of the court, even from the service of civil process while in attendance, etc."
And the present Chief Justice, in his concurring opinion in Gorham's
case, said: "The Constitution, Art. 4, sec. 12 provides: `The General Assembly shall have no power to deprive the Judicial Department of any power of jurisdiction which rightfully pertains to it as a coordinate department of the Government.' If the General Assembly had expressly enacted that such acts as are here found to have been committed by the respondents, could not be punished by the courts, it would have been a nullity as an attempt to deprive the judiciary of a power which has belonged to it from the remotest antiquity, and which has never been denied to any other court, and which is an inherent power necessary to the very existence of any authority in the courts. If the moment a juror passes out of the court room, hired lobbyists in the pay of powerful and wealthy suitors can take them in charge, suborn them, bribe them, sleep with them, treat them, and snap their fingers with importunity at the court, then indeed the judiciary is worse than `exhausted.' It will not avail that the parties can be tried for `embracery' at the next term, if all the judge can do is to make a mistrial. The injuries done and the contempt of the court is most fully shown by preventing a trial at this term. The contempt could not be more direct or palpable if a band of armed men had followed the jury to the court house with threats of violence if their verdict was unfavorable, and had stood just outside the door to execute punishment if disappointed. It is equally a contempt of court whether a man meets a juror just outside the court room with a bribe or a bludgeon in his hand. If the court cannot prevent either because not done within the court room, the administration of justice is no longer free. The independence of the judiciary no longer exists."
The fact that several of the North Carolina authorities were in proceedings "as for contempt," under some special provisions of the statute on that subject, does not impair or in way interfere with the powers of the court to deal summarily in cases coming also within (747) the sections appertaining to direct contempt. And the same considerations which justify the imposition of summary punishment afford the basis for our devisions to the effect that in cases of this character breaches of the peace, noise, or other disturbance directly tending to interrupt the proceedings of the court, neither an appeal nor trial by jury nor, as a matter of right, a removal of the hearing *Page 791 
before another judge is permissible. It would present a humiliating exhibit of helplessness if a court, holding a term and engaged in the present dispensation of the State's justice, could have its attorneys assaulted, its jurors bribed, or its subpoenaed witnesses intimidated or beaten and find its orders made in the effort to protect them and to enforce respect and obedience to its authority, stayed till they could be reviewed on appeal. The statute, Revisal, sec. 939, recognizes that no appeal shall be allowed in such cases and our decisions are to like purport. In re Brown,supra; Ex parte McCown; Ex parte Deaton.
No more should there be a trial by jury or a removal before another judge as a matter of right. Speaking to this question in Brown's case, the Court said: "While it is understood with us that in mere matters of procedure and in courts below the Supreme Court which comes under the influence of a special constitutional provision, the question presented may be to some extent regulated by legislation, it is also held that both as to direct and constructive contempts the trial is properly had by the court without the intervention of the jury, and usually by the court against which the offense has been committed. . . . The power in question is conferred to enable a court to command respect and obedience, and it would go far to weaken and, in case of direct contempt, would well-nigh destroy it if the occasion of its present exercise would have to be referred for decision to some other tribunal or agency." And it is in no sense the denial of a constitutional right that a jury trial is refused in such cases.
In Brown's case the Court said further: "At common law, the power of courts of record of general jurisdiction to punish for contempt, and in certain instances by summary procedure, has existed time out of mind, as said by Judge Blackstone, `as far as the annals of the law extend,'" and by C. J. Wilmot, in King v. Alman, 8 State Trials, 53, quoted in McCown's case, supra: "The power which the courts in Westminister Hall have of vindicating their own authority is coeval with their first foundation and institution; it is a necessary incident to every court of justice, whether of record or not to fine and imprison for a contempt of the court acted in the face of it (1 Vent. 1), and the issuing of attachments by the Supreme Courts of Justice in Westminister Hall for contempts out of court stands upon the same immemorial usage as support the whole fabric of the common law; it is as much the lex terrae and within the exception of Magna (748) Carta as the issuing any other legal process whatever. I have examined very carefully to see if I could find out any vestiges or traces of its introduction, but can find none; it is as ancient as any other part of the common law; there is no priority or posteriority to be discovered about it, and therefore it cannot be said to invade the *Page 792 
common law, but as act in alliance and friendly conjunction with every other provision which the wisdom of our ancestors has established for the general good of society."
Well might the Massachusetts Court, therefore, in Cartwright's case,supra, say that "summary procedure in their cases is in accord with the law of the land," within the meaning of our declaration of rights, and when a person, as in this instance, is guilty of "breach of the peace, noise or other disturbance, directly tending to interrupt the proceedings of a court holding a term for the administration of the law, they may be summarily punished instantly and without further investigation if it occurs in the presence and view of the court, and on notice to show cause and proper proof had if further evidence is required, and in neither case is an appeal or trial by jury allowed." Ex Parte Terry, 128 U.S. 289.
If a defendant, in such case, has reason to believe that a legal right has been denied and it is made to appear that the court was without "jurisdiction of the cause and was manifestly without power to impose the sentence complained of, the same may be inquired into on habeas corpus
proceedings, removed to this Court if necessary by writ of certiorari." Inre Holly, 154 N.C. 163.
The defendant having been adjudged guilty of direct contempt, and by reason of unlawful conduct tending to "interrupt and hinder the proceedings of the court and to impair the respect due to its authority," no appeal lies from the sentence imposed upon him, and this will be certified that the same may be duly enforced by process issuing from Superior Court.
Appeal dismissed.
Cited: In re Fountain, 182 N.C. 53, 54; S. v. Hooker, 183 N.C. 767;Luther v. Luther, 234 N.C. 432.