## UNITED STATES v. ZAVELO et al.

(Circuit Court, N. D. Alabama, S. D. March 25, 1910.)

1. ARREST (§ 9*)—PRIVILEGES—FREEDOM FROM ARREST.
   The privilege of a witness of freedom from arrest under civil process during the time he reasonably consumes in going to, attending, and returning from court to his home is to insure due administration of justice.
   [Ed. Note.—For other cases, see Arrest, Cent. Dig. §§ 20–32; Dec. Dig. § 9.*]

2. CONTEMPT (§ 6*)—SERVICE OF CIVIL PROCESS ON WITNESSES—STATUTES.
   Where witnesses were brought by the United States to testify in a criminal proceeding from another state, and duly subpœnaed, and after the termination of the proceeding they were served with civil process by the acquitted defendant in an action for malicious prosecution growing out of their testimony, such act constituted a "contempt" of court, within Rev. St. § 725 (U. S. Comp. St. 1901, p. 583), limiting the jurisdiction of the federal courts to punish a misdemeanor committed in the presence of the court or so near as to obstruct the administration of justice, though

the service was not in the courtroom nor in its immediate vicinity; the court's power being construed to extend as far as necessary to the protection of the witness.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 6, 10, 13; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 2, pp. 1489-1492; vol. 8, p. 7614.]

Contempt proceedings against B. Zavelo and certain others for serving civil process on witnesses under subpœna by the United States to testify in a criminal proceeding by the United States against Zavelo and others, during a witness' attendance at the court. Prosecution sustained in part.

O. D. Street, U. S. Atty.

C. B. Powell, for defendants.

GRUBB, District Judge. This matter comes up for decision upon a rule served upon the respondents, at the instance of the United States attorney, citing each of them to show cause why they should not be attached for a contempt of the Circuit Court arising out of the facts herein set out.

The respondent Zavelo was a defendant in a criminal prosecution in the District Court. Certain witnesses for the government were brought to Birmingham, the place of trial of this cause, by it from another state, but were regularly subpœnaed as witnesses in the cause. After the termination of the criminal suit, which resulted in an acquittal of the respondent Zavelo, Zavelo instituted civil suits for malicious prosecution, arising out of the criminal prosecution, against the witnesses who had testified in behalf of the government, and caused process to be executed on said witnesses, after the disposition of the criminal case, but before the witnesses had left, or had had reasonable opportunity to leave, the place of trial on their return journey to their homes. The other respondents were the attorneys of record of Zavelo in the civil suits and the state officers who served the civil process on the witnesses and persons who assisted the officers in making such service.

The question presented is as to the extent of the privilege of witnesses to be exempt from the service of civil process, which did not involve arrest, while attending another court in another cause, and as to whether persons violating such privilege are in contempt of the court, in attendance upon which the witnesses were when so served.

The privilege of a witness of freedom from arrest under civil process during the time he reasonably consumes in coming to court, attending upon it, and returning from it to his home, is well established by the authorities. Larned v. Griffin (C. C.) 12 Fed. 590, and cases cited. As this privilege extends to the witness for a reasonable time after his discharge as a witness, to enable him to reach his home, it is clear that the reason supporting it is not altogether that the detention of the witness may prevent his presence and testimony in the cause at the term at which he is summoned to testify, by reason of his confinement under the writ of arrest. The probability that the fear of ar-

rest may prevent his return to the place of trial at a future term, if his presence be thereafter required, operates also in support of the rule, as does the general deterrent effect upon the attendance of witnesses at court of a contrary rule.  The purpose of the privilege is not so much for the advantage of the witness as for the proper and efficient conduct of the court in the procuring of the necessary attendance of its witnesses.  This being the reason of the rule, it seems clear that the difference in effect in this respect between writs of arrest and other civil processes is a difference of degree rather than one of kind.  The deterrent effect would exist, but possibly not so forcibly, in the latter as in the former class of process.  That the possibility of being so subjected to service of process in a civil suit, which could not otherwise reach a witness, would be a material inducement operating to prevent his attendance upon court in all cases in which his attendance was optional and could not be enforced by subpœna, is manifest.  This seems an ample reason for extending the rule to process not involving arrest of the person; and the authorities support the extension, though not with unanimity.  In re Healey, 53 Vt. 694, 38 Am. Rep. 713; Bridges v. Sheldon (C. C.) 7 Fed. 17–45; Atchison v. Morris (C. C.) 11 Fed. 582.  Contra: Blight v. Fisher, 3 Fed. Cas. 704; Ex parte Schulenberg (C. C.) 25 Fed. 211.

As the privilege is for the advantage of the court, as well as for the witness, it seems that the willful violation of the privilege should constitute a contempt of the court, and that the setting aside of the service of the process would not adequately and completely redress the wrong, at least in so far as it directed against the court.  This view is sustained by the three first cases cited above.  In 16 Am. & Eng. Ency. Pleading, 983, the rule is stated as follows:

"It is generally held that a person who causes the arrest of a privileged party or procures the service of a summons in violation of privilege may be punished for contempt of the court, whose guaranty of protection is thus violated."

To what extent is this conclusion modified with respect to federal courts by the provision of section 725, Rev. St. U. S. (U. S. Comp. St. 1901, p. 583), which limits the jurisdiction of the federal court to punish for contempt to three classes of cases:  (1) Misbehavior of any person in the presence of the court or so near thereto as to obstruct the administration of justice; (2) misbehavior of officers of the court in their official transactions; and (3) disobedience or resistance to any lawful writ, process, order, rule, decree or command of the court by any person?

So far as this proceeding relates to the attorneys, it would seem that their act in knowingly causing the writ to be served on privileged witnesses would constitute misbehavior of officers of the court in their official transactions.  The attorneys for the defendant, Zavelo, in the criminal case, were also his attorneys in the civil case brought by him against the witnesses, and in which the process was issued and served on them.

The acts relied on the United States attorney were not committed in the immediate presence of the court.  Were they committed so near to it as to obstruct the administration of justice?  The tendency to ob-

struct justice is just as effectually accomplished by causing process to be served on witnesses, while in attendance on the court, though not in its immediate presence, as by causing it to be served on them in the immediate presence of the court. The willful arrest on civil process of a witness, before his testimony had been given, but while he was away from the courtroom during a recess, would be too palpable an obstruction of the administration of justice to go unredressed. Yet if the rule is limited to acts obstructive of justice, committed in the courtroom or its immediate vicinity, it would necessarily go unpunished. The true rule would seem to be that the power of the court extends as far as the necessity of protection to the witness. The privilege of the witness extends to his sojourn at the place of trial and his trip in coming and going between such place and his home. The power of the court to punish a willful violation of the privilege should be equally broad, or the privilege would be a futile one to the witness; and the power of the court to procure the attendance of witnesses, with or without subpœna, would be impaired. Wrongful conduct, the inevitable consequence of which is to obstruct the administration of justice, will be construed to have occurred near enough to the presence of the court to accomplish that result which is, in fact, accomplished by it.

The witnesses, upon whom process was served, were under subpœna. They were held in attendance upon the court by its writ, order, or process. Implied in that order was the protection of the court extended to them against any violation of their exemption from service of civil process while in attendance upon the court. Any willful violation of such privilege, with knowledge of its existence, would constitute a violation of the order, writ, or process of the court, and a contempt. The statute would be narrowly construed, if limited to disobedience by the person to whom the order was directed. If others, not embraced in the order, by compulsion prevented the person to whom it was directed, from obeying it, they would be guilty of disobedience and resistance of it, within the meaning of the statute. In the case of United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319, the Supreme Court adjudged the defendants, who were merely members of the mob, equally, with the sheriff and his deputies, to have violated the court's order, and to be in contempt therefor. In the case of Bridges v. Sheldon (C. C.) 7 Fed. 45, the court said, as to the effect of section 725:

"Still this court, as are all federal courts, is limited in its power to punish for contempt. Their power extends only to misbehavior in the presence of the court, or so near as to obstruct the administration of justice, or of the officers of the court, or to disobedience or resistance of any lawful writ, process, order, rule, decree, or command of the courts. Rev. St. U. S. § 725. The master was acting under the authority of the court when he made the order. A disturbance of the master's proceedings would have been a contempt of the court; and, had any one undertaken by force to prevent the defendants from attending the examination of witnesses ordered, probably no one would contend it was not a contempt. This interference was of the same nature; still it is not punishable as a contempt, unless it was done in disobedience of, or resistance to, an order of the court. This does not mean a written order always, but only an exercise of authority, constituting a requirement. Had a writ of protection issued, as one might, there would have been no question but that there was an order to be regarded. But, as before shown, the actual ex-

istence of such writ neither makes nor adds to the protection. The order to take testimony issued under the authority of the court carried with it the protection of the court from the service of foreign process in attending the taking. That protection was an order. McNeill's Case, 6 Mass. 264. The service of the process was a disobedience of the order. The service of the process in Hall's Case was denominated a disobedience of thé writ, in the opinion of the court. 1 Tyler [Vt.] 274. The conduct of the orator constituted a contempt of the authority of the court, whether it was so actually intended or not."

A different conclusion would imperil the administration of justice, since it is always possible for persons to accomplish acts of obstruction away from the immediate presence of the court as effectually as within it, and to prevent the enforcement of the court's order or process, though not included in its mandate, and so, in either case, to defeat the administration of justice with impunity. A fair construction of section 725 would extend its provisions so far, and only so far, as is imperative to confer authority on the courts to prevent all persons from engaging in acts directly obstructive to their proper conduct, by punishment thereof as contempts of its authority.

The defendants Brown and Cooper will be discharged from the rule, as it is not shown that they had knowledge that the parties upon whom the process was served were within the protection of this court when served. The other defendants are adjudged to be in contempt of this court, of which they will be permitted to purge themselves upon payment of the costs of this rule and causing to be set aside the service obtained in each of the suits instituted upon any and all of said witnesses, within 30 days from the date of the rendition of this order, otherwise, they will be required to pay a fine of $50 each and the costs of this proceeding.