## 11900.  MORGAN *v.* THE STATE.

1. Under all the facts of the case this court cannot as matter of law say that the judge erred in refusing to give more time to the respondent to make answer and demurrer to the rule.

2. Where a court is in session and a witness has been sworn and is leaving the court-house, he is entitled to the same protection as when going into the court-house to be sworn, and should not be abused, harassed, browbeaten, or insulted because of his testimony.  This protection surrounds the witness in every part of the place set apart for the holding of the court, including the court-house yard.

DECIDED DECEMBER 16, 1920.

Rule for contempt; from city court of Blackshear — Judge Mitchell.  September 16, 1920.

*James R. Thomas,* for plaintiff in error.

*S. Thomas Memory, solicitor,* contra.

BLOODWORTH, J.  Only the second headnote needs elaboration. A rule nisi was issued by the judge of the city court of Blackshear against B. H. Morgan, calling upon him to show cause why he should not be adjudged in contempt of court because he " did accost and abuse " C. A. Thomas, a witness, about the evidence

of Thomas in a case then on trial in that court. At the hearing thereon the prosecuting witness testified: " I was sworn as a witness, and after I had left the stand and had gone out of the court-room up-stairs, and was on the lower floor of the court-house down-stairs, B. H. Morgan walked up and put his hand around my shoulder and said to me, ' Old boy, you were God damned crooked to-day.' We walked out of the court-house, and while we were in the court-house yard he came to me and said, ' If a damned son of a bitch was to swear a lie against me, I would kill him.' He didn't curse me for the above directly, but indicated that my testimony was crooked. We went on down town and took a drink of coca-cola together. I paid for the drinks. This ended the affair. " Other witnesses swore to substantially the same words, but none of them placed Morgan in the court-house when he used the objectionable language. Their evidence showed that it was used in the court-house yard and as they were leaving the court-house. The court adjudged Morgan guilty of contempt and enforced a fine upon him, and he excepted.

In his brief counsel for the plaintiff in error insists that " the conduct of the plaintiff in error was not in the presence of the court, was not in his hearing, did not disturb the court, did not disturb any one connected with the court, and therefore the judge of the city court of Blackshear was without jurisdiction of the subject-matter, and had no authority under the law to impose a sentence as for a contempt. " We recognize the distinction drawn by Chief Judge Hill in *Hewitt* v. *State,* 12 *Ga. App.* 168 (76 S. E. 1054), in reference to the two classes of courts in this State and the power of each to punish for contempt. Under that ruling the power of the city court of Blackshear to punish for contempt is fixed by § 4643 of the Civil Code of 1910, which is as follows: " The powers of the several courts in this State to issue attachments and inflict summary punishment for contempt of court shall not extend to any cases, except the misbehavior of any person or persons in the presence of said courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any officer of said courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree or command of the said courts:"

Where a court is in session, and a witness has been sworn and is leaving the court-house, he is entitled to the same protection as if he were going into the court-house to be sworn, and should not be abused, harassed, brow-beaten, or insulted because of his testimony. When a witness is thus approached by a person who says to him, " Old boy, you were God damned crooked to-day," " If a damned son of a bitch was to swear a lie against me, I would kill him, " thus referring to the evidence of the witness, whether this occurred on the first floor of the court-house or in the yard as the witness was leaving, this misbehavior was in the presence of the court or so near thereto as to obstruct the administration of justice.

In the case of Savin, 131 U. S. 267 (9 Sup. Ct. 699, 33 L. ed. 150), the Supreme Court of the United States had under consideration a statute which provided that the " power to punish for contempt shall not be construed to extend to any cases except the misbehavior of any person or persons in the presence of said courts or so near thereto as to obstruct the administration of justice." It will be observed that this statute is almost identical with section 4643 of the Civil Code of 1910 quoted above. Mr. Justice Harlan, in the opinion in that case, said: · " Flores, we have seen, was in attendance upon the court in obedience to a subpœna commanding him to appear as a witness in behalf of one of the parties to a case then being tried. While he was so in attendance, and when in the jury-room, temporarily used as a witness-room, the appellant endeavored to deter him from testifying in favor of the government, in whose behalf he had been summoned; and, on the same occasion, and while the witness was in the hallway of the court-room, the appellant offered him money   not   to   testify against Goujon, the defendant in that case. Was not this such misbehavior upon the part of the appellant as made him liable under § 725 to fine or imprisonment, at the discretion of the court? This question cannot reasonably receive any other than an affirmative answer.   The jury-room and hallway where the misbehavior occurred were parts of the place in which the court was required by law to hold its sessions. It was held in Heard v. Pierce, 8 Cush. 338, 341, that ' the grand jury, like the petit jury, is an appendage of the court, acting under the authority

of the court, and the witnesses summoned before them are amenable to the court, precisely as the witnesses testifying· before the petit jury are amenable to the court.' Bacon, in his essay on Judicature (No. LVI), says: 'The place of justice is an hallowed place; and therefore not only the bench, but the footpace and precincts and purprise thereof ought to be preserved against scandal and corruption.' We ˙ are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court." In ex parte McLeod, 120 Fed. 130, where section 725 of the Revised Statutes of the United States (5 Fed. Stat. Ann. (2 ed.) 1009, § 268), referred to above, was again under consideration, Jones, District Judge, said: "What is meant by the words 'so near thereto' has not been defined by judicial decision. In view of the evil intended to be suppressed, they mean not the place where the 'misbehavior' is committed, but the power of the 'misbehavior' to harm the administration of justice. If the force put in motion by the 'misbehavior,' at whatever place it is committed, assails or threatens the authority and independence of the court, then the 'misbehavior' is 'so near thereto' as to be punishable under this section." See also United States v. Huff, 206 Fed. 700, 705; United States v. Zavelo, 177 Fed. 536, 539; United States v. Anonymous, 21 Fed. 761, 770.

Under the above ruling, as well as under our own view as to the proper construction of the law, the judge did not err in holding that the accused be "adjudged in contempt of court," and in making the rule absolute.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.·*