### REDMAN v. UNITED STATES.
### No. 7687.

Circuit Court of Appeals, Ninth Circuit.
April 29, 1935.

C. T. McKinney, of Phœnix, Ariz., for appellant.

Clifton Mathews, U. S. Atty., and F. E. Flynn, Asst. U. S. Atty., both of Phœnix, Ariz.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

In May, 1934, Henry J. Sullivan was placed on trial in the United States District Court for the District of Arizona upon an indictment charging him with the willful attempt to defeat and evade his income tax due the United States, and appellant was one of the panel of jurors summoned to attend. On the 15th of that month the trial began and appellant was called in the jury box for examination on the voir dire and was accepted as one of the jurors in the case. The examination of appellant, as far as the same relates to the charge here, was conducted by the judge and the assistant United States attorney. He has been adjudged guilty of criminal contempt in obstructing justice in that, it is claimed, he gave false answers in response to questions affecting his qualifications as a juror. The basis for the charge of contempt is found in the information filed by the United States attorney, wherein it is stated that appellant gave false answers to two questions propounded to him by the court and the assistant United States attorney touching his qualifications to serve as a trial juror. The question propounded by the court to all the jurors, to which appellant made no answer, was: "Let me ask you this, gentlemen: Is there in the minds of you any reason why, or that suggests itself to you as a reason why, you could not sit, or might not be properly able to sit, in this case, other than or in addition to the matters you have already been questioned about; anything relating to your own physical condition, for instance, or anything that might interfere with your exercising your duties as jurors?"

And the question propounded to appellant by the United States attorney was:

"Q. You believe that you could go into the jury box and consider the evidence and render a fair and impartial verdict on the evidence? A. Yes, sir."

Further, it is charged that appellant, contrary to his oath, refused to accept or follow the instructions given by the court as to the law of the case.

From the view we have taken of the case, we will dispose of only the assignments of error relating to appellant's right to a jury trial and the insufficiency of the evidence to support the charge of contempt.

The demand for a jury trial is untenable, when we find that this proceeding is brought under section 725 of the Revised Statutes, now Jud. Code, § 268 (28 USCA § 385), where a juror is charged with misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice, and does not come within the class of contempts where trial by jury is allowed under the Clayton Act (28 USCA §§ 386, 387), for the Clayton Act declares that it shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice. Clark v. United States, 289 U. S. 1, 53 S. Ct. 465, 77 L. Ed. 993; United States v. Dachis (D. C.) 36 F.(2d) 601; Bowles v. United States (C. C. A.) 50 F.(2d) 848. A trial juror is not only within the presence of the court, but he is under the general supervision and control of the court, and the section under which this proceeding is brought is extended to any misbehavior of a trial juror in his capacity as such, if it tends to obstruct the administration of justice. In re May (D. C.) 1 F. 737. In considering whether the evidence is sufficient to warrant adjudging one guilty of contempt, we must apply the principle that the power of the court to punish for contempt should be used with caution and deliberation. In re La Varre (D. C.) 48 F.(2d) 216. It is punishable as a contempt for a juror to conceal or make a misstatement upon a voir dire examination if its tendency and design are to obstruct the

processes of justice, and the court may consider his conduct during the deliberations of the jury which is not a denial of any lawful privilege; but when considering such conduct the court should take into consideration all of the questions propounded and answers given and the discussion in the jury room, in order to fairly determine the state of mind of the juror.

 We turn then to the record before us and the evidence there, when considered as a whole, and are unable to say from it that there is sufficient evidence of guilt to warrant the punishment of appellant for contempt, for it must be remembered that we are dealing with a situation where a layman is being interrogated by numerous questions framed by the court and counsel in words which he might have conscientiously thought he understood when answering and yet they conveyed a different thought. However, the entire examination of appellant reveals the fact that he did not conceal that he had an opinion, for he often answered, when interrogated, that he entertained an opinion and that it would require evidence to remove it. He told the court and counsel that he formed an opinion from what he had read in the newspapers and heard about the case, but, if accepted as a juror, he felt he could, after hearing the evidence, lay the opinion aside and render a verdict on the evidence. His numerous answers as to having an opinion were frank, and he answered the question set forth in the information, propounded to him by the United States attorney, without hesitation, and as to the one propounded by the court directed to all of the jurors he gave no answer. Although clearly giving the information he did in his answers, as to having an opinion, he was not challenged by either party. He did not know the defendant Sullivan and nothing appears that he was in any way interested in the outcome of that case.

Now, as to what occurred in the jury room: It seems that some of the jurors, in their discussion of the case, referred to their experience in making income tax returns, and appellant, during the discussion, referred to an experience a company he was working for at one time had in making an income tax return. He never had to make an income tax return for himself and has not had any trouble with the government. The discussion does not indicate that because of the experience of the company it caused him to vote as he did. As to the

further charge, that he said he would not follow the instructions of the court, it is fair to say, from the evidence, that he did not mean that he would not do so, for the discussion in that regard related to the weight or effect to be given to a check, as to it being a payment of money. He expressed himself that "he couldn't feel that a check was legal tender, and therefore he couldn't consider it as being paid until the money was paid on the check." In making such an expression he seems to have been right. While it developed that appellant voted for an acquittal of the defendant, there were other jurors who did also, and a disagreement of the jury resulted.

Should the government have no further evidence than that disclosed in this record, tending to establish guilt of the charge of contempt of appellant, the trial court is ordered to dismiss the action.

Reversed.

WILBUR, Circuit Judge (concurring).

I concur in the opinion of Judge CAVANAH. I assume that there was no intention in the opinion to extend the principles established in Clark v. United States, 289 U. S. 1, 53 S. Ct. 465, 77 L. Ed. 993, as to the right to punish jurors for contempt.

One charge against the appellant was that he had answered affirmatively, and falsely, the question, "Do you believe that you could go into the jury box and consider the evidence and render a fair and impartial verdict on the evidence?" In support of this allegation a juryman was called who testified that the appellant during the deliberations of the jury made a statement to the effect that a corporation with which he was connected had been fined $125 for some oversight in its income tax return. With reference thereto the appellant testified as follows:

"A. At the time that statement [the above answer] was made, when I went into the jury box I didn't even remember the incident, never thought about it at all until the attorneys were speaking on the case.

"Q. Yes. A. That brought it to my mind.

"Q. Now, what did the attorneys say? Was this during the argument to the jury? A. During the argument to the jury.

"Q. And what did the attorneys say that refreshed your memory about this incident? A. The attorneys made the assertion—it wasn't in the testimony that I know of, but made the assertion that any man, whether

layman or lawyer, was liable to make a mistake in an income tax return that he might be prosecuted for. That was the lawyer's speech, as I remember it.

"Q. Yes. A. And that brought to my mind for the first time that there was never no feeling, no ill feeling whatever between me and the Internal Revenue man at this office down here. It wasn't my personal tax; it was a company tax that I was working for.

"Q. It was a company tax of which you were manager of the company? Is that right? A. I was manager of just a little group of farmers over there that was running a cotton gin, that was all. We didn't have a physical asset at all.

"Q. It was called the People's Ginning Company? A. Yes, sir.

"Q. And you were the manager, and who was the president of the company? A. I don't remember now who was the president, but I think it was Frank Ramsey.

"Q. Yes. A. We had during the life of the company two presidents. One of them was Frank Ramsey. I don't know who the other one was.

"Q. It wasn't a personal tax matter with you at all, was it? A. None whatever. I never paid the government income tax in my life.

"Q. It was the company that was fined, and not you? A. Not me at all."

The best evidence that could be adduced in favor of the truth of the answer of the juror to the effect that in his opinion he could render a fair and impartial verdict notwithstanding this incident was the fact he had entirely forgotten it, for if he had entertained bitterness or hatred toward the government because of the fine of $125 it would be because he had not forgotten it.

The view of the court, as expressed in his opinion adjudging the appellant guilty of contempt, was that the juror was guilty of contempt in failing to divulge an incident which he had entirely forgotten. In that regard we quote the opinion as follows: "I am firmly convinced that what the foreman of the jury here has said is true. And I am firmly convinced that this Mr. Redman, even according to his own statement, that he did not reveal his controversy, or the controversy to which he was a party, to the officers and to the court, which was itself an imposition upon the court. It was his duty to reveal it. That is not explained by the fact that he forgot it."

A man should not be sent to jail for forgetfulness. The question before the court was not whether the appellant should have stated the facts concerning the controversy between a corporation with which he was connected and the government, but whether his answer that he could fairly and impartially try the case was intentionally false and made with the design of securing a place on the jury so as to effectuate some ulterior purpose of the appellant.

The singular feature of this case is that the juror informed the court on his voir dire that he had a definite opinion as to the guilt of the defendant based upon newspaper accounts and upon the facts, and he was accepted by the court and counsel on both sides without any inquiry as to what his opinion was or upon what facts it was based. It now appears that his opinion was that the defendant was guilty. He is being punished because he stated in effect that he could lay aside his opinion and try the case fairly, and in fact he did lay aside his opinion and voted in favor of a verdict of acquittal. There is no indication in the record anywhere that the appellant desired to act on the jury because of any ulterior motive; he was evidently quite ready to inform the court that in his opinion the defendant was guilty and only refrained from doing so because he was not questioned further on the subject. There is nothing in the evidence which made a prima facie case against the juror which justified the introduction of evidence as to what occurred in the jury room. The appellant did not object to the evidence as to what occurred in the jury room, no doubt believing that such evidence would establish his innocence rather than his guilt. The information also charged the juror with disobeying the instruction of the trial judge given in the trial of the criminal case. This did not charge a substantive offense, but such conduct at most was evidence tending to support the charge of false swearing with which we have already dealt.

It is clear from the opinion of the Supreme Court in the case of Clark v. United States, supra, that there is no power in a court to punish a juror for failing to follow the instructions of the trial judge. That procedure was abandoned in England as early as 1670 A. D. (see preliminary treatise on Evidence at the Common Law, by Thayer, p. 166, cited by the Supreme Court in Clark v. United States, 289 U. S. 1, 53 S. Ct. 465, 77 L. Ed. 993, supra), and so far as

130

I have been able to discover has never been adopted in this country. The trial judge was evidently of the opinion that such a refusal to follow the instructions of the court constituted contempt of court and punished the juror therefor. We quote the opinion in that regard as follows: "The instruction was passed clear-cut, which the alleged contemnor here admits. According to the testimony of the foreman, he failed to observe, refused to observe that instruction. I must perforce be governed by what I believe to be the facts of the case. This juror must understand that the proceedings in this court are not to be trifled with, but are to be taken only after due consideration, and that a proper solemnity must attend them. A clear-cut disregard of the proceedings here cannot, if the effectiveness—if the standing of this court is to be preserved—*so disregarded of unpunished.*" [The last four words are probably incorrectly reported or transcribed.]

In so far as the order adjudicating the appellant guilty of contempt is based upon refusal to obey the instruction of the trial judge, it is erroneous.

I have somewhat amplified the statements of the main opinion because I feel that the effect of the prosecution of a juror for contempt in answering a mere general question as to his judicial frame of mind tends not only to make jury service more unattractive than it is now to the average citizen, but would tend to terrorize jurors in the performance of their duties and force convictions against the judgment of jurors. Whatever the defects of the jury system, it is evident that if it is to be preserved the rights of jurors to discuss matters fully and fairly in the jury room, and to act upon their independent judgment, must be preserved.