IN THE MATTER OF APPLICATION TO ADJUDGE JAMES T. MOORE
IN CRIMINAL CONTEMPT.

(*April* 5, 1957.)

LAYTON, J., sitting.

*Herbert L. Cobin*, Chief Deputy Attorney-General, for the State.

*Edmund N. Carpenter, II*, for the Defendant.

Superior Court for New Castle County, No. 56, Cr. A., 1957.

LAYTON, J.:

As a result of the testimony produced at the hearing, I find the following facts:

Defendant is a partner in Moore Bros., electrical contractors. He has no familiarity with the law. On the evening of March 15, 1956, he was told by his brother, another partner, to go over to the Magistrate's office and identify certain property believed to have been stolen from their store. Upon arriving at the Magistrate's, he met the local police chief, identified the property as that of his firm and a warrant was drawn up against the accused, who was already in the custody of the police. This defendant signed the warrant and he, the arresting police officers, and the defendant walked into the Magistrate's inner office where trials are usually held. Defendant swore that the contents of the warrant were true. The accused was arraigned and pled guilty with the result that there was no trial. There were no State police officers present. No representative of the Attorney General's staff was there. Defendant was confused as to his status. He did not consider himself a witness as he understood the term nor was he sure whether the matter was being prosecuted on behalf of the State or of the City of New Castle. At the trial in this Court, he was present with some sixty jurors. He heard question No. 3 asked. He understood it as being for the purpose of ascertaining whether or not any one of them was prejudiced against the defendant Hatton. He had nothing against Hatton. He was not sure that he was in Hatton's office on March 15, "called as a witness on behalf of the State." He thought about it and decided that he was not; that he was there merely to identify the stolen property. Moreover, he is somewhat inarticulate, not used to public appearances and loath to arise in a crowded Courtroom to disclose facts pertaining to the evening in question, when in his own mind, he was reasonably

certain he had not been called as a witness in behalf of the State in a criminal prosecution at which Hatton presided. Accordingly, he remained silent.

Upon these facts, has defendant been guilty of criminal contempt of the Court in the sense that he obstructed justice by remaining silent instead of arising and divulging the happenings of the evening of March 15th when question No. 3 was read? The State insists that he was guilty of contempt. It relies on *Clark v. United States*, 289 *U. S.* 1, 53 *S. Ct.* 465, 467, 77 *L. Ed.* 993, and *United States v. Lampkin, D. C.*, 66 *F. Supp.* 821. In the *Clark* case, Mr. Justice Cordozo had this to say:

"Concealment or misstatement by a juror upon a *voir dire* examination is punishable as a contempt if its tendency and design are to obstruct the processes of justice.

"There was concealment by the petitioner, and that willful and deliberate. She had been asked to state the kinds of work that she had been doing in other years. She counted off a few, and checked herself at the very point where the count, if completed, would be likely to bar her from the box. There is no room for the excuse of oversight or negligence. She had been warned that disclosure would lead to challenge and rejection. With her mind full of the warning she told the part truth that was useless, and held back the other part that had significance and value. Whether this was perjury or false swearing, there is no occasion to inquire. It was a deliberate endeavor to thwart the process of inquiry, and to turn a trial into a futile form.

"Added to concealment there was positive misstatement. The petitioner stated to the court that her mind was free from bias. The evidence is persuasive that it was hostile to the government. Bias is to be gathered from the disingenuous concealment which kept her in the box. She was intruding into a relation for which she believed herself ineligible, and intruding with a motive. The only plausible explanation is a preconceived endeavor to uphold the cause of the defendants and save them from their doom. Bias, thus revealed at the beginning, is con-

firmed by everything that followed. While the trial was still in progress, she argued with her fellow jurors that Foshay was a hapless victim of circumstances too strong for him, and went outside the evidence, quoting statements in a newspaper to win them to her view. After the trial was over and deliberations had begun, she waived aside all argument and closed her ears to the debate. She had closed her mind to it before.

" 'An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is * * * the characteristic upon which the power to punish for contempt must rest.' White, C. J., in *Ex parte Hudgings*, 249 *U. S.* 378, 383, 39 *S. Ct.* 337, 339, 63 *L. Ed.* 656, 11 *A. L. R.* 333. The petitioner is not condemned for concealment, though concealment has been proved. She is not condemned for false swearing, though false swearing has been proved. She is condemned for that she made use of false swearing and concealment as the means whereby to accomplish her acceptance as a juror, and under cover of that relation to obstruct the course of justice. There is a distinction not to be ignored between deceit by a witness and deceit by a talesman. A talesman when accepted as a juror becomes a part or member of the court. *Ex parte Savin*, 131 *U. S.* 267, 9 *S. Ct.* 699, 33 *L. Ed.* 150; *United States v. Dachis (D. C.)* 36 *F.* 2d 601. The judge who examines on the *voir dire* is engaged in the process of organizing the court. If the answers to the questions are willfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham. What was sought to be attained was the choice of an impartial arbiter. What happened was the intrusion of a partisan defender. If a kinsman of one of the litigants had gone into the jury room disguised as the complaisant juror, the effect would have been no different. The doom of mere sterility was on the trial from the beginning."

And in *United States v. Lampkin*, above cited, which quotes with approval from the *Clark* case, the Court said this [66 *F. Supp.* 824]:

"* * * The juror should, of course, whether specifically questioned or not, disclose any material information which might bear upon his qualifications, but it would not do to find a juror guilty of contempt for failing to do so where no question was asked, which would fairly call the matter to the juror's attention. However, where the questions are asked it is not within the province of the juror to determine the relevancy of the matter inquired about and it is his duty to make truthful answers to such questions without evasion, equivocations or concealment."

Material differences in the facts of the cited cases from those of the case at bar should be noted. In the cited cases, the answers were wilfully evasive or knowingly untrue which cannot fit the circumstances here. The whole atmosphere of the *Clark* case was that of a prospective juror, an intimate friend of the defendant, by false answers or the deliberate withholding of information obviously pertinent to the inquiry, deliberately insinuating herself onto the jury panel for the ill-concealed purpose of impeding his conviction on a charge where the other eleven jurors found guilt. There are no such facts in this case.

Nor, unlike the *Lampkin* case, did question No. 3 "fairly call" to defendant's attention a compelling necessity for making full disclosure of the events of the evening of March 15. True, he realized that the purpose of the question was to elicit his qualifications, or lack of them, as a juror but he thought, and not unnaturally, that the question was asked in order to ascertain whether any of the jurors was prejudiced against the defendant[1] and, in fact, he had no prejudice against him. Moreover, unlike the *Lampkin* case, this defendant did not tell a

---

[1] "Mr. Morford—In the *Hatton* case, if your Honor pleases, I would like to submit to the Court certain *voir dire* questions. These have been submitted to the Attorney General.

"The Court—There is an agreement between counsel * * * that each member of the jury panel be asked the following questions, and if any one * * * comes within the category embraced by these questions, would you please raise your hand."

direct lie under oath while under *voir dire* examination thereby concealing a fact which, if known to the government, would undoubtedly have led to his being challenged. He withheld facts under circumstances where he, as a layman, was in some doubt as to the correct answer but honestly thought he was correct in maintaining silence.

Defendant relies on statements from *Redman v. United States*, 9 Cir., 77 F. 2d 126, and *Orenberg v. Thecker*, 79 U. S. App. D. C. 149, 143 F. 2d 375, as indicative of the fact that, under the circumstances here, he cannot be said to have been guilty of contempt.

In the *Redman* case, the Court said [77 F. 2d 127]:

"* * * In considering whether the evidence is sufficient to warrant adjudging one guilty of contempt, we must apply the principle that the power of the court to punish for contempt should be used with caution and deliberation. In re La Varre (*D. C.*) 48 F. 2d 216. It is punishable as a contempt for a juror to conceal or make a misstatement upon a *voir dire* examination if its tendency and design are to obstruct the processes of justice, and the court may consider his conduct during the deliberations of the jury which is not a denial of any lawful privilege; but when considering such conduct the court should take into consideration all of the questions propounded and answers given and the discussion in the jury room, in order to fairly determine the state of mind of the juror.

"We turn then to the record before us and the evidence there when considered as a whole, and are unable to say from it that there is sufficient evidence of guilt to warrant the punishment of appellant for contempt, for it must be remembered that we are dealing with a situation where a layman is being interrogated by numerous questions framed by the court and counsel in words which he might have conscientiously thought he understood when answering and yet they conveyed a different thought. * * *"

And in the *Orenberg* case, the Court used this apt and sensible language:

"The second specification is that some jurors gave false answers or concealed material information by silence when questioned on their *voir dire,* concerning claims for personal injuries previously suffered by them. * * * It can be too easily assumed that laymen, called from ways of life far removed from the courtroom, will understand words and terms of art customarily used by lawyers and judges. As a matter of fact, many such words are not well understood by lawyers and judges themselves. It would be a violent assumption that such laymen will be alert to give considered answers to questions containing several such words or terms, or that failure to respond constitutes concealment or a false answer. For example, even to lawyers and judges, such words as claim and presented have varied meanings. Some laymen, who have had no courtroom experience, do not know the meaning of plaintiffs, personal injuries and other words which were used in the questions propounded by counsel for appellants. Within the last year this court had occasion to decide a dispute between able counsel as to the meaning of the words plaintiff and defendant, as used by Congress in recent legislation. It would be asking a great deal of laymen that they be certain and confident in the use of lawyers' words when lawyers themselves disagree as to their meaning. It would be grim irony to insist that our juries must constitute a representative cross section of all the people if at the same time impossible standards of performance were imposed. Moreover, in the present case, the questions propounded were not directed to each venireman separately. Instead, they called for voluntary responses upon the initiative of each. Many lawyers, remembering their own first appearances in court, will understand the trepidation of a layman who, for perhaps the first time in his life, occupies the spotlighted position of the jury box; and his reluctance to discuss with able counsel, abstract legal issues such as those implicit in the questions propounded in the present case. These are the considerations which

must be kept in mind in determining whether there was such giving of false answers or concealment of material information as to constitute misconduct and require, so compellingly, the granting of a new trial as to establish abuse of discretion upon the part of the trial judge. * * *"

Without in any way seeking to retreat from the principles expressed in *Clark v. United States, supra,* a leading case, it nevertheless seems to me that the *Redman* and *Orenberg* cases are more applicable under the facts here.

There are three reasons why, in my judgment, this defendant should not be convicted for criminal contempt in making no disclosure to question No. 3. First, he was not a lawyer and the use of legal terms such as "witness", "called as a witness", "on behalf of the State", etc., could not have had the same meaning to him that it would to lawyers. Frankly, I am not absolutely sure myself that this defendant was at the Magistrate's office "called as a witness", and even though it is probable that he would be considered by most lawyers, including myself, as being present[2] as a witness (or as a potential witness), nevertheless, we must make due allowance for the defendant's ignorance of legal terms and his own understanding of why he was there which was in obedience to a telephone call from his brother to go over to the Magistrate's office to identify some stolen property.

Secondly, if this defendant had in fact made a full statement to this Court as to his activities on March 15, in the Magistrate's office, no thoughtful person could say that either side would have affirmatively been put on notice of facts indicating that it should challenge him.

Thirdly, this is a criminal proceeding and defendant is entitled to the benefit of the principle of reasonable doubt. *State v. Klein,* Del. Ch. 1956, 123 *A.* 2d 740. In this connection,

---

[2]"Called as a witness" might well carry with it the connotation in the lay mind of having appeared pursuant to the request of one or the other of the parties and actually having testified.

I have considered a number of factors, (a) defendant's lack of knowledge of legal terms and practices; (b) his expressed thought that question No. 3 was asked for defendant Hatton's benefit—that is, to ascertain whether any of the jury entertained some prejudice against Hatton, which he did not; (c) his thought that he was called only to identify property, not to appear as a witness in a criminal trial and, finally, (d) the very real doubt as to whether defendant, in remaining silent, concealed information of any actual value to counsel in determining whether or not he should be challenged.

After weighing each of these factors, I have a positive doubt as to whether defendant's conduct was for the purpose of insinuating himself onto the jury with the object of obstructing justice. *Clark v. United States.* The defendant is entitled to the benefit of this doubt and is accordingly acquitted.

This is not to say that the conduct of defendant in remaining silent in the face of this question merits approval. He used bad judgment. The fact is he should have made a full disclosure. It was for the Court, not for him, to decide whether the happenings of March 15, 1956, were relevant to the *voir dire* examination. In remaining silent, even though innocent of evil motive, he rendered the cause of justice a disservice if for no other reason than the notoriety which has attached itself to this case.

For the reasons expressed, a verdict of not guilty is herewith entered.