## UNITED STATES *v*. PATTERSON.

*(Circuit Court, W. D. Tennessee. February 11, 1886.)*

CONTEMPT—STRIKING AN ATTORNEY DURING RECESS.

It is a contempt to strike an attorney in the court-room, although the judge be not on the bench and the court be in recess, and although the cause of the assault have no relation to the proceeding in which the attorney is engaged.

During a session of the court, and while a jury case in which Newman Erb, Esq., a member of the Memphis bar, was engaged as counsel, an intermission or recess of one hour was taken. Just after the presiding judge had come down from the bench, but before he or all the jurors and witnesses in attendance had left the court-room, and before Mr. Erb had retired from the bar, the respondent, Patterson, entered, and approaching, struck Mr. Erb, when further violence was at once prevented by those standing about. Upon the convening of the court, the following order was made of its own motion, and duly entered of record:

"It coming to the knowledge of one of the judges of this court, by his personal observation and otherwise, that immediately upon the taking of the noon recess, on Tuesday, February 9, 1886, M. R. Patterson, a citizen of Shelby county, Tennessee, committed an assault, by striking in the face, upon Newman Erb, Esq., in the court-room of this court, and at the bar thereof, the said Erb being then and there engaged as an attorney of one of the parties in a suit the trial of which was in progress at the time of taking the recess; it is therefore ordered that the said M. R. Patterson appear before this court on Wednesday, February 10, 1886, at 10 o'clock A. M., at the court-

room, in the city of Memphis, then and there to show cause, if any he can, why he should not be punished for a contempt of this court. It is further ordered that the marshal serve a copy of this order upon said Patterson, and that the district attorney appear and prosecute this proceeding in behalf of the United States."

This order was duly served as directed, and the marshal's return is on file evidencing the service.

The respondent, in obedience to the order, appeared and filed the following answer under oath:

"In answer to the order to show cause why he should not be punished for contempt, respondent, M. R. Patterson, says that soon after coming to his office, on Tuesday morning, his attention was called to a communication from Newman Erb, Esq., in the *Appeal* of that date, a leading journal in the city of Memphis, severely reflecting upon the character of respondent's father, who was absent from the state. Respondent immediately sent for the paper containing said communication, which appeared to respondent to have been prepared with great care, and to be a deliberate and willful assault upon the good name and integrity of respondent's father. Respondent felt it his duty to resent this assault, and it was not his purpose to commit severe bodily harm, but to resent it by a blow with his hand. With this view respondent went to the custom-house, in which the circuit court of the United States was in session, intending quietly to remain in the marshal's office until the adjournment of court, and then resent the affront in the manner stated above. Accordingly he went to the marshal's office, where he had been quietly sitting for nearly two hours, when one of his partners came from the court-room, and respondent learned from him that the court had adjourned. His partner had in some way not known to respondent learned of his purpose, and they remained for a short time in conversation, his said partner endeavoring to pursuade him to think further of the matter before acting. In this way respondent was detained for some time after he had been informed that court had adjourned, and was satisfied that his honor, the presiding judge, had left the bench and retired from the room, and he thought it probable that Mr. Erb had also gone. On entering the court-room from the marshal's office respondent discovered that Mr. Erb had not gone, and went immediately towards him, addressed him so as to call his attention, and slapped him with his hand. At the time of this occurrence respondent was not aware of the presence of the presiding judge, and believed after he had retired from the bench and adjourned the court that he had also left the room. Respondent has high personal regard for the presiding judge, and a deep sense of the importance of order and decorum in courts of justice, and could not be induced, intentionally, to do an act that would manifest want of respect for his honor, or that would infract, in the slightest, a proper observance of such order and decorum. He meant no contempt. If guilty, technically, it was without design, and respondent shall feel a profound and keen sense of regret and sorrow if, unintentionally, he has done an act that amounts to contempt of court. Respondent again repeats that, in discharging what he believed to be a duty due from him, he was solicitous not to commit a contempt of court, and thought he had so acted as not to offend in that regard. Having fully answered, respondent prays to be hence dismissed."

*John B. Clough,* Asst. Dist. Atty., for the United States.

*George Gentt,* for respondent.

HAMMOND, J. It is a rude discourtesy to a court, and a grave attack upon the dignity of the authority to which the court belongs, to use its court-room as fighting ground, under any circumstances, even

though the court be in recess and the judge not upon the bench. The circumstances of this case show that the respondent had no intention or thought of any incivility to the court or the judge, and the cause of the rencounter had no connection, near or remote to the court, or any of its proceedings. The mistake of the respondent was in assuming that when the judge left the bench he might, so far as the court was concerned, proceed to accomplish his purpose of making the assault, supposing that it was only when the judge was upon the bench that any question of contempt could arise. But it must be apparent to every one that this is a misconception, and far too restricted to admit of approval anywhere. A court would deserve the contempt of public opinion if it permitted so narrow a view of its prerogatives to prevail, and could not complain, if, during its recess, the court-room should be used for a cock-pit or a convenient place to erect a prize ring. That is the logic of the false assumption that was made in this case.

But wholly aside from this consideration there is a principle of protection to all who are engaged in and about the proceedings of a court that requires preservation against misbehavior of this kind. The defendant in court whose attorney was attacked is entitled to the protection of the court against any personal violence towards its attorney, while he is in attendance on the court. Otherwise, attorneys might be driven from the court, or deterred from coming to it, or be held in bodily fear while in attendance, and thereby the administration of justice be obstructed. This principle might be pressed beyond reasonable limits, to be sure, but it certainly is not going beyond the true confines of the doctrine to apply it here. It protects parties, jurors, witnesses, the officers of the court, and all engaged in and about the business of the court, even from the service of civil process while in attendance, and certainly should protect an attorney at the bar from the approach and attack of those who would do him a personal violence. A former ruling of this court on that subject has been especially approved by very high authority. *U. S.* v. *Anonymous,* 21 Fed. Rep. 761; *Sharon* v. *Hill,* 24 Fed. Rep. 726.

The only trouble I have in such cases is in fixing the proper punishment. I have always thought that I should invariably impose imprisonment on all who should fight in this court as the only adequate punishment for so grave an offense. Here, however, was a misconception of the general subject, and an honest belief that no wrong to the court could be implied from the transaction. The occurrence took place at recess, and while I do not deem this at all material as a mitigation of the offense, it furnishes the basis of respondent's assumption that the court could not be involved in the matter. It is only this misapprehension that causes me to mitigate the punishment. Hereafter there can be no misunderstanding on this point; and while this case will be a precedent for the principle we would enforce, it will not be considered such as to the character

of the punishment inflicted. The respondent will be adjudged in contempt of the court, and fined $100, and pay the cost of this proceeding, and stand committed until the fine and costs are paid.

See note to *In re Carey*, 10 Fed. Rep. 629–633.