THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RACHEL REEVES, Defendant-Appellant.

(No. 74-14;

Third District—November 19, 1974.

*Rehearing denied December 17, 1974.*

Dinah B. Dyer, of Wisch & Dyer, Ltd., of Chicago, for appellant.

Martin Rudman, State's Attorney, of Joliet, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from the order of the circuit court of Will County finding respondent, Rachel Reeves, guilty of criminal contempt and sentencing her to 7 days in the Will County jail. This contempt action was brought pursuant to a petition for rule to show cause filed on behalf of the People by Martin Rudman, State's Attorney of Will County.

This action arose out of a case in the circuit court of Will County which involved the custody of two children, Elaine and Susan Ross. The two children had been been in the foster care of respondent, Rachel Reeves, from 1966 until March 9, 1973, at which time they were taken from her by court order and placed in an orphanage. In January, 1973, the proceedings were begun to remove Elaine and Susan from Mrs. Reeves' care. Rafael Toruno, assistant State's Attorney handling the matter, had appeared four or five times in connection with the removal proceedings. On August 2, 1973, Judge Angelo Pistilli was to hear a motion from the Department of Children and Family Services regarding a modification of a custody order previously entered by Judge Pistilli. On that date Rafael Toruno requested Judge Pistilli to continue the hearing on the motion due to the absence of the natural parents and their attorney. Argument was heard on the motion to continue after which Judge Pistilli continued the cause to August 23, 1973. Toruno testified that he saw respondent in the courtroom at the beginning, during and at the conclusion of the proceedings. At one point during the hearing respondent's attorney asked for a recess during which he took Mrs. Reeves, who was weeping, into the corridor. The events in question concerning the contempt occurred outside Judge Pistilli's courtroom in the corridor after the motion to continue was granted. About 15 to 20 people including news media and supporters of the Reeves milled outside in the corridor. Judge Pistilli was not present in the corridor during the incident. Five observers testified as to the occurrence including four news representatives and one attorney who had come out of another courtroom. None of the media representatives saw any

poking of Mr. Toruno by Rachel Reeves but one did see Mrs. Reeves moving her right hand in an up and down motion and the attorney testified that he saw Rachel Reeves poke Rafael Toruno in the left cheek three or four times with the finger or fingers of her right hand and that he saw Mr. Toruno's head go back and forth as he was poked. Mr. Toruno testified that as he came into the corridor from Judge Pistilli's courtroom Mrs. Reeves, a Mrs. Hahn and an unidentified lady walked toward him and began shouting at him. Mrs. Hahn was shouting about Toruno's wife working for the Department of Children and Family Services in Will County and about Albert Rudman, father of Will County State's Attorney Martin Rudman, being the bailiff in Judge Pistilli's courtroom. Toruno stated that he turned from the three women to go toward Judge Pistilli's chamber doors but before he got there he began a conversation with a Reverend Norton during which the three women again approached him and he turned to face them. During this conversation Mrs. Reeves shouted words the basic import of which was, "What are you doing to my children * * * you don't care about my children" and thereupon poked him in the left cheek with the extended finger or fingers of her right hand three or four times. As he turned to leave by the door to the chamber area someone yelled, "You'd better run you son of a bitch." Toruno then entered the chambers and a petition was subsequently filed by the People of the State of Illinois requesting that Rachel Reeves be adjudged guilty of indirect contempt of court. On September 4, 1973, Circuit Judge Michael A. Orenic conducted the hearing on the petition at which the above facts were adduced and then held Rachel Reeves to be in indirect criminal contempt and fixed her punishment at 7 days' incarceration in the Will County jail.

On appeal respondent's first contention is that it was error to admit evidence of the possibly contemptuous words and actions of persons other than Rachel Reeves. The evidence to which respondent refers is Toruno's testimony that Mrs. Hahn made accusations that nepotism had colored the proceedings, his testimony that someone had shouted, "Run you son of a bitch" as he left the corridor area, the attorney-witness' testimony that Jack Reeves had shouted, "Run you son of a bitch" and that a female voice coming from the place where Rachel Reeves was standing but not necessarily from Rachel Reeves herself also shouted, "Run you son of a bitch." Respondent concedes in her brief that if the People's contention that the evidence of the words and actions of others was offered not to prove their truth but to make the entire transaction understandable, then their admission would not be prejudicial to her. It is respondent's contention, however, that Judge Orenic's order clearly indicated that he attributed the crowds' temper to Rachel Reeves,

wherein he stated, "I do believe however that Rachel Reeves was emboldened by the support, aid and comfort from Mrs. Hahn and certain sympathetic members of the press." Respondent contends that the court inferred the intent of the crowd was that of Mrs. Reeves and that it was not proven beyond a reasonable doubt that Mrs. Reeves possessed the necessary intent to support a conviction for criminal contempt of court. Respondent cites two cases. In *City of Chicago v. Hart Building Corp.*, 116 Ill.App.2d 39, 253 N.E.2d 496, the court held that the respondent acted knowingly, contemptuously and wilfully. In *People ex rel. Chicago Bar Association v. Barasch*, 21 Ill.2d 407, 173 N.E.2d 417, the court merely stated that the guilt of the one accused of contempt criminal in nature must be proved beyond a reasonable doubt. We must hold here that there is sufficient evidence of the respondent's intent to knowingly and intentionally strike the assistant State's Attorney. We do not interpret the remarks made in the order as substituting the intent of the crowd for that of respondent, but rather such remarks reflect the circumstances present at the time as testified to by all the witnesses.

■■ Respondent next argues that the necessary intent here was not proved beyond a reasonable doubt and cites a case which concerned direct contempt for giving false testimony in the trial of a case, *People v. Bialek*, 31 Ill.App.2d 281, 175 N.E.2d 278, which in turn cites language from *People v. Hille*, 192 Ill.App. 139, a direct contempt case, to the effect that the intent necessary is a " 'malevolent intention to assail the dignity of the court, or to wilfully and knowingly interfere with its procedure or due administration of justice.' " (31 Ill.App.2d 281, 284.) In the case at bar there is ample evidence to support a finding respondent knew she was hitting and did hit the assistant State's Attorney assigned to the custody case and did so immediately after leaving the courtroom and while in the corridor immediately outside the courtroom. Such facts are sufficient to support the necessary intent required for indirect contempt.

Respondent argues further that, assuming the battery occurred, she was held in contempt not for the act but for the milieu in which that act occurred. The contention is made that the rule applicable in cases of contempt for perjury that the further element of actual obstruction to the court in the performance of its duty must be proved should be applicable here. It is sufficient to hold here that the striking of an assistant State's Attorney by a party to a case assigned to such attorney immediately after they leave the courtroom and while in the corridor immediately outside such courtroom is sufficient to constitute indirect contempt of court. Again we note respondent is charged with responsibility for her own conduct and not that of the crowd.

■■ Respondent's final argument is that, even if the conviction for contempt is allowed to stand, the sentence imposed is harsh and inappropriate. We agree with defense counsel that a jail sentence here would be inappropriate. As the People quote in their brief, "In fixing a penalty for contempt of court, it must be made sufficient to vindicate the authority of the court, and of law, it must also inhibit further violations, and serve as a warning to others. A reasonable discretion must be allowed in weighing these factors." (*American Zinc Co. v. Vecera,* 338 Ill.App. 523, 531, 88 N.E.2d 116.) We hold here that, in light of the attendant circumstances, *i.e.,* the emotional nature of the case and the distraught condition of respondent, in applying the standard in the foregoing quotation incarceration is not required and would serve no useful purpose. We believe the purposes of the extraordinary action for contempt will be adequately served and the authority of the court vindicated by the imposition of a small monetary fine.

■■ For the foregoing reasons, the order of the circuit court of Will County is affirmed as to the conviction and reversed and remanded for the assessment of a penalty not involving incarceration.

Judgment affirmed in part and reversed and remanded in part.

ALLOY and DIXON, JJ., concur.