THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANTON D. ERNEST, Defendant-Appellant.

Fifth District   No. 5—87—0660

Opinion filed September 29, 1989.

HARRISON, J., dissenting.

Stanton D. Ernest, of Fowler, Rhine & Ernest, of Mt. Carmel, appellant *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney,

Solicitor General, and Terence M. Madsen and Michael J. Singer, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Defendant, a lawyer, was found guilty of direct criminal contempt for subpoenaing a judge. We affirm.

Defendant, retained by beneficiaries who had not received notice of final accounting in an estate, concluded that he needed the testimony of the judge who was presiding over the case, Robert Keenan, to determine if there had been fraud in the final accounting. Defendant filed a motion for substitution of judges, intending to subpoena and depose the judge to discover what had happened at the hearing on the final accounting. The substitution motion was denied, the court noting that it did not believe that a judge could be subpoenaed under those circumstances.

Defendant had a subpoena issued for the judge, who, in response, had defendant appear before him later that day. Defendant was asked if he understood that the basis of the denial of the motion to substitute was that there was no authority for a judge to give testimony in a case in which he was presiding. Defendant said he did. The judge asked if he had issued the subpoena and defendant admitted that he had. The judge then extended an opportunity to withdraw the subpoena and told defendant that if he did not, he would be cited for contempt. Defendant said, "I won't withdraw it, so you might as well do that."

Judge Keenan drafted a formal order, calling it a "rule to show cause," which set forth the facts surrounding the incident, and the matter was referred to Judge Hill for disposition.

Judge Hill held a hearing, found defendant in direct criminal contempt and fined him $50.

All agree, the contempt was criminal, not civil; its effect was punishment, not coercion.

Defendant claims that: (1) having the subpoena issued was not contumacious; and (2) the hearing he was given by Judge Hill violated both the United States Constitution and the Illinois Constitution, because: (a) no prosecutor appeared for the State; (b) no evidence was presented against him in the hearing; (c) he was deprived of his right to confront and cross-examine his accusers because no witnesses testified against him in the hearing; and (d) Judge Hill improperly undertook a prosecutorial role at the hearing.

The threshold question is whether defendant's conduct was contumacious.

■ Contumacious conduct consists of verbal or nonverbal acts which:

> (1) embarrass or obstruct the court in its administration of justice or derogate from its authority or dignity;
>
> (2) bring the administration of justice into disrepute; or
>
> (3) constitute disobedience of a court order or judgement.

See *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50; *People v. L.A.S.* (1986), 111 Ill. 2d 539, 490 N.E.2d 1271.

■ Specific intent is not a necessary predicate for criminal contempt. "Whether such a contempt has been committed depends upon the act and not the alleged intention of the offending party." (*Kneisel v. Ursus Motor Co.* (1925), 316 Ill. 336, 342, 147 N.E. 243, 244.) In terms of common law analysis of *mens rea*, therefore, a general intent is all that is required. Thus, intent, knowledge, or recklessness will satisfy the *mens rea*.

We believe that the issuance of the subpoena was contumacious.

■ A judge cannot and should not be a witness in a case in which he is presiding. If a subpoena were obeyed, the judge would be forced off the case, giving a litigant a powerful, but illicit tool. To permit it would lead to the most obvious mischief.

Granted, the subpoena was for discovery, not testimony, implying that defendant merely wanted to find out if the judge had any useful evidence. Nevertheless, it put the court in the embarrassing position of being interrogated in discovery in the same case over which he had jurisdiction. Therefore, the issuance of the discovery subpoena tended to obstruct the court in its administration of justice, and derogate from its authority and dignity. Imagine the spectacle of a judge objecting to deposition questions asked of him in some case over which he presides—a spectacle simply because the judge ruling would be the judge objecting.

The filing of a subpoena with the clerk under these circumstances had the tendency to embarrass and obstruct the court, and although the filing was out of the immediate presence of the judge, it was within an integral part of the court. *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50; *In re Estate of Melody* (1969), 42 Ill. 2d 451, 248 N.E.2d 104; *People v. Andalman* (1931), 346 Ill. 149, 178 N.E.2d 412.

Furthermore, defendant had a remedy for the denial of his motion for substitution of judges. After all, he could have appealed the court's ruling rather than subpoena the court.

The contempt must next be categorized as direct or indirect.

■ The difference between direct and indirect contempt is that

no evidentiary hearing is necessary to prove direct contempt, but is required to prove indirect contempt. *People v. L.A.S.* (1986), 111 Ill. 2d 539, 490 N.E.2d 1271.

■ Production of evidence is not necessary to establish direct contempt, because the conduct has occurred in the presence of the court, making all of the elements of the offense within the court's own personal knowledge. *People v. L.A.S.* (1986), 111 Ill. 2d 539, 490 N.E.2d 1271.

On the other hand, production of evidence is necessary to establish indirect contempt because an essential part of the conduct occurred outside of the presence of the court, is not admitted, and therefore, depends for its proof upon evidence of some kind. *People v. L.A.S.* (1986), 111 Ill. 2d 539, 490 N.E.2d 1271.

■ In this case, the contempt is direct for two reasons. First, the subpoena on its face showed that defendant had it issued, and since the court can take judicial notice of its own files, the essential facts were within the judge's own knowledge. Second, defendant admitted to Judge Keenan that he had the subpoena issued. Therefore, all the essential facts were within the court's own knowledge. No evidence was necessary; no hearing was required.

We next address defendant's claim that the way the hearing was conducted violated the United States Constitution as well as the Illinois Constitution.

The hearing conducted before Judge Hill did not violate the United States Constitution or the Illinois Constitution, defendant's claims to the contrary notwithstanding.

■ Where a controversy between the judge and the contemnor is integrated with the alleged contumacious conduct and embroils the judge to the degree that the judge's objectivity reasonably can be questioned, the issue of whether contempt has been committed as well as imposition of sanctions should be referred to another judge. (See *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499.) When the facts here are compared with the facts in *Mayberry*, it is safe to say that Judge Keenan could have handled this case himself. However, he apparently felt better referring it and we do not criticize that decision.

■ ■ When such a case is referred, the judge before whom the contempt was committed should specify the acts of contempt in writing and direct that a record of the proceedings surrounding the acts be prepared. Both the transferring judge's charge of contempt and the transcript are forwarded to the judge to whom the case has been assigned. The judge hearing the matter shall base his findings and ad-

judication of the contempt charge solely on the transferred written charge and record. (*Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499. See also *Taylor v. Hayes* (1974), 418 U.S. 488, 41 L. Ed. 2d 897, 94 S. Ct. 2697.) Judge Keenan's contempt charge, called by him a "rule to show cause," has been reviewed and found to constitute a valid charge of contempt. The upshot of all this is that no prosecutor was needed, no evidence needed to be presented and no witnesses had to testify. The purpose of the referral was to avoid imposition of criminal sanctions by a court still smarting under the contempt. It did not transform this direct contempt into indirect contempt. Therefore, defendant was not deprived of his rights of confrontation and cross-examination. *In re Grand Jury Investigation of Swan* (1981), 92 Ill. App. 3d 856, 415 N.E.2d 1354.

Lastly, we have examined the record of the hearing before Judge Hill and we do not find that he acted as a prosecutor. He acted as judge.

In closing, we hope that this distasteful matter is behind our fellow professionals, Judge Keenan and Attorney Stanton Ernest. Both are men of integrity, good character and good reputation.

The circuit court is affirmed.

Affirmed.

GOLDENHERSH, J., concurs.

JUSTICE HARRISON, dissenting:

I agree with the majority that a judge presiding at a trial should not testify as a witness at that trial. Although the majority cites no authority for this proposition, I believe that it is implicit in section 2—1001(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(a)(1)), which provides, in part, that a change of venue may be had in a civil action where the judge's testimony is material to either of the parties to the action.

In the matter before us here, however, the judge was not being called as a witness. He was subpoenaed solely for the purpose of taking his deposition as part of the discovery undertaken by defendant on behalf of his clients. Because discovery may include not only what is admissible at trial, but also that which leads to what is admissible (*United Nuclear Corp. v. Energy Conversion Devices, Inc.* (1982), 110 Ill. App. 3d 88, 104, 441 N.E.2d 1163, 1174), having the judge submit to a deposition would not necessarily have resulted in his later being subject to call as a witness at the actual trial and, therefore, having

to remove himself from the case.

A party's right to conduct depositions is not, of course, absolute. Supreme Court Rule 202 (107 Ill. 2d R. 202), which deals with discovery through depositions, must be viewed in conjunction with Supreme Court Rule 201 (107 Ill. 2d R. 201), which empowers the courts to deny, limit, condition and regulate discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage or oppression. (*People ex rel. Illinois State Dental Society v. Norris* (1979), 79 Ill. App. 3d 890, 901, 398 N.E.2d 1163, 1172.) The majority here suggests that it is somehow inherently embarrassing for a trial judge to have to submit to a deposition in a case over which he is presiding. Under its approach, the trial judge in a case could never be deposed as part of that case. In effect, the trial judge would be placed beyond the reach of discovery, regardless of the circumstances. There is no basis for this position. To the contrary, it is flatly inconsistent with Supreme Court Rule 202 (107 Ill. 2d R. 202), which expressly states that "[a]ny party may take the testimony of *any* party or *person* by deposition." (Emphasis added.)

There is nothing in this record to indicate that defendant acted other than in good faith when he requested that the clerk issue the subpoena for the judge's deposition. His only concern appears to have been obtaining information about developments in the case which he believed to be highly irregular and possibly fraudulent. I fail to see how this would tend to obstruct the court in its administration of justice or derogate from its authority and dignity in any way. Defendant here did nothing to bring the administration of justice into disrepute, nor did he disobey any court order or judgment. The prior order of the court merely denied defendant's motion for change of venue under section 2—1001(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(a)(1)); it did not prohibit defendant from requesting that the clerk issue a subpoena so that he could take the judge's deposition. If the judge did not think that issuance of the subpoena was proper, what he should have done is simply order that the subpoena be quashed, leaving defendant to pursue the matter on appeal if he so chose.

There is no justification on this record for holding defendant in contempt. I would therefore reverse.