908 P.2d 22

Robert A. **HIRSCHFELD**, Petitioner,

v.

**SUPERIOR COURT of the State of Arizona, in and For the COUNTY OF MARICOPA, The Honorable Michael D. Ryan, a judge thereof, Respondent Judge.**

No. 1 CA–SA 95–0126.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 26, 1995.

Review Denied Dec. 19, 1995.

Donald M. Peters and Osborn Maledon, P.A. by Larry A. Hammond and John Stookey, Phoenix, for Petitioner.

Craig Mehrens, Special Prosecutor, Phoenix, for Respondent.

## OPINION

KLEINSCHMIDT, Presiding Judge.

The Petitioner, Robert A. Hirschfeld, an attorney, was convicted of criminal contempt of court and sentenced to five nights in the Maricopa County Jail and ordered to pay a fine of $300. The conviction arose out of his harassment of the opposing party to a child custody action in which Hirschfeld was involved. The harassment occurred in the corridor outside the courtroom during a recess in the proceedings. Hirschfeld brought this special action seeking a reversal of the conviction and sentence. Because contempt orders are reviewable by special action, *see and compare Van Baalen v. Superior Court,* 19 Ariz.App. 512, 508 P.2d 771 (1973) and Ariz.R. of P. for Special Actions 1(a), we accepted jurisdiction, stayed the execution of sentence, and took this matter under advisement.

We deny the relief requested. The court has the right and the duty to protect all persons who are in attendance upon it from abuse while they are in or near the courtroom. Misbehavior towards such persons lessens the dignity and authority of the court and is punishable as a contempt of court.

## THE FACTS AND PROCEEDINGS IN THE TRIAL COURT

The facts, construed most strongly against Hirschfeld, are as follows. Hirschfeld was the attorney for the father in a child custody dispute between divorced parents. The parents had agreed to joint custody, and a dispute arose when the mother did not return the child to the father as required by the agreement.

The case was assigned to Judge Norman Hall of the Superior Court for Maricopa County. In the late afternoon of a day in March 1995, Hirschfeld, his client, and the child's mother were in Judge Hall's chambers where the mother was seeking a temporary custody order. The father was seeking an order that the child be returned to him. The mother was representing herself, but she had been accompanied to court by a friend who was waiting in the hallway. The judge decided not to resolve the issues that day, and he directed the parties to return the following day to continue the hearing. The child was to stay with the mother pending the completion of the hearing.

As Hirschfeld and the parents were leaving the judge's chambers, Hirschfeld asked the mother where she was hiding the child. The mother asked Judge Hall whether she had to answer the question, and the judge said that she did not. He said to Hirschfeld, "Leave her alone," and then, "We'll take care of this at ten o'clock." The judge then went back into his chambers, and the parties and Hirschfeld left the anteroom to the chambers and walked into the hall.

As the mother was walking down the hall towards the elevators, Hirschfeld called out in a loud voice demanding to know where she was hiding the child. The mother became fearful, and instead of waiting to take an elevator, she walked quickly past the elevators and turned left down a corridor. By this time she was accompanied by her friend. As the mother was hurrying down the hall, she could hear Hirschfeld's voice in the background, and she began to panic. For a mo-

ment, the mother and her friend stood in a shallow alcove in front of an empty courtroom. Fearing that Hirschfeld would find them and continue to harass them, they went through the doors leading to the empty courtroom and into a small waiting room. In a short time Hirschfeld approached, looked in the room and said, "They're in here." At some point, he again demanded to know where the child was. All of this was done in an abusive and harassing manner. Hirschfeld left and walked down the hall, and the mother and her friend went into the dark courtroom, through a back door, and made their way back to Judge Hall's anteroom.

The mother was emotionally upset, and someone from Judge Hall's office summoned help from the sheriff's office. When two deputy sheriffs responded, Hirschfeld and his client were in the hallway. The deputy who first approached them did not know Hirschfeld, and he asked him for identification. Hirschfeld responded that he had no identification and demanded that the deputy arrest the mother for custodial interference. The second deputy, who did know Hirschfeld, arrived. Apparently Judge Hall had told the deputy to escort Hirschfeld and his client out of the courthouse and that is what they did.

The following day, Judge Hall cited Hirschfeld for contempt of court. The judge recited what he knew and had heard about Hirschfeld's conduct and said that he was citing Hirschfeld pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–864 and Rule 33.1 of the Arizona Rules of Criminal Procedure. The judge singled out as the "operative language" the part of the rule referring to one who "engages in any other willfully contumacious conduct which lessens the dignity and authority of the court." Later, when Judge Hall was interviewed by counsel for Hirschfeld, he made it clear that he had not cited Hirschfeld for disobeying the judge's admonition to "leave her [the mother] alone." At the contempt hearing, Judge Hall again acknowledged that he was not charging Hirschfeld with disobeying any order, and he said that he did not consider any of Hirschfeld's contumacious conduct to have been directed at the judge or his staff. Instead, he said that all of the offensive conduct had been directed at the mother.

The evidentiary hearing on the citation for contempt was held before Judge Michael D. Ryan. Following the hearing, Judge Ryan found Hirschfeld in contempt of court. Judge Ryan orally explained his findings and ruling at length:

The particular conduct or the particular charge here is whether or not Mr. Hirschfeld engaged in willfully contumacious conduct which lessened the dignity and authority of the court.

The court's opinion here is that every litigant should be able to exit the courthouse without being harassed by counsel for the other side. The court, I think, has inherent power to regulate the behavior of litigants, in particular, attorneys, in the immediate areas around the courthouse, particularly the hallways and anterooms and elevator areas of the courthouse.

In this situation we are not talking about downstairs in the common areas. We're not talking about outside the courthouse. We are talking about areas that are within the hearing of the courtrooms, within immediate—or adjacent to the courtrooms, and right outside the courthouse doors, the courtroom doors. So therefore, what I had to consider was whether or not Mr. Hirschfeld willfully engaged in contumacious conduct involving [the mother] and the person she was with.

The evidence clearly shows that Judge Hall asked—told Mr. Hirschfeld to leave the woman alone, and I understand and I realize that he is not being charged with willfully disobeying the order of Judge Hall, but looking at all the activities involved here, Mr. Hirschfeld really just disregarded anything that Judge Hall said. He went outside the immediate chambers area and in the hallway outside the chambers area of Judge Hall's court and other courts, began harassment, haranguing, and badgering [the mother].

The credible evidence shows that instead of normally leaving the courthouse on the elevator, she went around and basically had to secrete herself or hide in a courtroom or in a witness room outside Judge

Hall and Judge D'Angelo's courtroom. The evidence, beyond a reasonable doubt, shows that Mr. Hirschfeld followed them, in fact, conducted a search. He first went into Judge Hall's anteroom and outside his courtroom looking for her and the person she was with.

I find that his testimony justifying those actions to be disingenuous at best, incredible, possibly perjurious. He then went into the anteroom of Judge Rogers' court, found [the mother], and continued his harassment of her, and this harassment started outside of Judge Hall's chambers and went down the hallway and continued into Judge Rogers' witness room outside of his courtroom.

His actions lessened the dignity and authority of the court. He disregarded the request of Judge Hall. He harassed [the mother] to the point that she was in tears and upset and in fear, and I find that this shows beyond a reasonable doubt that he willfully engaged in contumacious conduct which lessened the dignity and authority of the court, because I believe that litigants should be able to leave the courthouse without being harassed by counsel, opposing counsel, and his continuous harassment from the moment she left Judge Hall's chambers and through her trying to hide in Judge Rogers' anteroom and in his continual disrespectful behavior to the sheriff's deputies and so forth show a complete disregard for any dignity and authority of the court, and constitute, in my mind, beyond a reasonable doubt, that he engaged in willfully contumacious conduct which lessened the dignity and authority of the court.

As I said, the court should be able to ensure that litigants are not harassed while hanging around the courtroom and the judge's request to not bother the litigants is honored, and such activities as engaged in by Mr. Hirschfeld immediately adjacent to the courtroom and chambers lessened the dignity and authority of this court, and therefore, I do find that he is in contempt of court.

The citation for contempt was predicated on Rule 33.1, Arizona Rules of Criminal Procedure. The rule provides:

> Any person who willfully disobeys a lawful writ, process, order, or judgment of a court by doing or not doing an act or thing forbidden or required, or who engages in any other wilfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court, may be held in contempt of court.

### THE COURT HAS THE POWER TO PROTECT PERSONS ATTENDING COURT PROCEEDINGS

The proceeding against Hirschfeld was for criminal contempt because its purpose was to punish his behavior as opposed to compel him to comply with an order of the court. *Korman v. Strick*, 133 Ariz. 471, 473–74, 652 P.2d 544, 546–47 (1982). If Hirschfeld's conduct constituted contempt, it was indirect contempt because it did not occur in the immediate presence of the judge. *Ong Hing v. Thurston*, 101 Ariz. 92, 98, 416 P.2d 416, 422 (1966).

This case is not about a refusal to obey a court order. Although Hirschfeld's conduct was certainly contrary to Judge Hall's admonition to leave the mother alone, Hirschfeld was not cited for disobeying that admonition. Why he was not, we do not know. In any event, Judge Hall, who cited Hirschfeld, completely disavowed any reliance on such a theory of the case and Judge Ryan acknowledged that Judge Hall's admonition was not the subject of the citation or the hearing. Thus, the basic question is whether rude and harassing behavior between persons involved in a court proceeding which occurs out of the presence of the judge when court is in recess can be a contempt of court. Hirschfeld says it cannot.

We conclude that such behavior is a contempt of court for the very reason expressed by the trial judge—that the court has the right and the duty to protect litigants, witnesses, attorneys and jurors from misbehavior and harassment while they are in or near the courtroom, whether they are arriving, waiting, or departing. Conduct like Hirsch-

feld's, because it impinges on that right and duty, lessens the dignity and authority of the court. There are a number of cases which support this conclusion. We pass over, without comment, those many cases in which the conduct actually disrupted or delayed court proceedings. The cases we do rely on all concern misbehavior that occurred while court was in recess. All of them were decided under definitions of contempt that we believe equate to "contumacious conduct which lessens the dignity or authority of the court."

The case that best supports our conclusion is *United States v. Patterson*, 26 F. 509 (W.D.Tenn.1886). There, the respondent, a man named Patterson, believed that a lawyer had insulted Patterson's father. Patterson went to the courthouse where the lawyer was trying a case. He waited until court had adjourned and then entered the courtroom and struck the lawyer with his hand. As it happened, the judge had left the bench but was still in the courtroom, although Patterson did not realize that at the time he acted.

Patterson was cited for contempt and he defended on the grounds that he had intended no contempt, having waited until he believed the judge had left the room. The court rejected this defense for two separate and distinct reasons. The court said first that it is an attack on the dignity of the court to use the courtroom as a fighting ground, even when court is not in session. It rejected the contrary argument, saying:

> A court would deserve the contempt of public opinion if it permitted so narrow a view of its prerogatives to prevail, and could not complain, if, during its recess, the courtroom should be used for a cockpit or a convenient place to erect a prize ring.

26 F. at 511. In this context, as we will explain in more detail in our discussion of the dissent, we see no particular distinction between the courtroom and other areas adjacent to it.

The court in *Patterson* stated the second reason for its ruling as follows:

> But wholly aside from this consideration there is a principle of protection to all who are engaged in and about the proceedings of a court that requires preservation against misbehavior of this kind.
>
> . . . .
>
> Otherwise, attorneys might be driven from court, or deterred from coming to it, or be held in bodily fear while in attendance, and thereby the administration of justice be obstructed.

26 F. at 511. The court went on to say that this rule protected parties, jurors, witnesses, the officers of the court, and everyone engaged in and about the business of the court. Judge Ryan's ruling in the case before us is based squarely upon this second reason which the *Patterson* court gave as the basis for its holding.

A number of other cases reach similar results. In *Tanner v. United States*, 62 F.2d 601 (10th Cir.1932), *cert. denied*, 289 U.S. 746, 53 S.Ct. 689, 77 L.Ed. 1492 (1933), the attorney for the plaintiff in a civil case saw a juror in a case which had just been tried coming down the steps of the courthouse. The attorney was unhappy with the verdict, and he began to berate the juror, saying among other things that it was easy to see that money meant more to the juror than human suffering and that "you will have to answer for this." *Id.* The attorney followed the juror down the street, continuing to harass him about the verdict. The court, under a statute that defined contempt as misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice, or misbehavior of an officer of the court in his official transactions, found the attorney in contempt of court. *Id.* at 602. The court observed that it had a duty to protect jurors, and that although a verdict had been rendered, the case was not over, and the juror would be called in subsequent cases. It said that if the court were not able to protect jurors from such conduct they would be reluctant to do their duty in the future. *Id.*

In *People v. Reeves*, 23 Ill.App.3d 579, 319 N.E.2d 567 (1974), a woman who was a party to a parental termination proceeding, angry with the lawyer for the opposing side, poked him several times in the face with her finger. The incident occurred in the hallway outside

the courtroom during a recess in the proceeding. This was held to be a contempt of court. For other cases which support the same conclusion see: *United States v. Emerson,* 25 F.Cas. 1012 (C.C.D.C.1831) (No. 15,-050) (fight in hallway—unclear as to whether court was in session); *Morgan v. State,* 26 Ga.App. 83, 105 S.E. 449 (1920) (contempt to call a witness "crooked" and to continue similar remarks as witness left the courthouse); *Brown v. State,* 728 P.2d 494 (Okla.Crim.App. 1986) (attorney calling witness a liar in hallway during recess contemptuous because such was demoralizing to the court's authority); *State v. Goff,* 228 S.C. 17, 88 S.E.2d 788 (1955) (party who swore at and threatened witness who was sitting on courthouse steps during recess guilty of contempt).

The reasons articulated in *Patterson* and *Tanner* certainly apply here. The mother had every right to come to the courthouse without having to put up with stalking and a verbal assault by the opposing attorney. Were it otherwise, people would be reluctant to seek the peaceful means a court offers for the vindication of rights.

There are some cases which reach a contrary result. In *Edwards v. Jameson,* 284 Ark. 60, 679 S.W.2d 195 (1984), the defendants in a civil action, after court was finished for the day, accosted the lawyer for the opposing side in the hallway of the courthouse and called him the "lowest son of a bitch on the face of the earth." *Id.* The attorney tried to avoid the defendants, and a deputy sheriff who had heard what was going on told them to quit annoying the attorney. Nonetheless, the defendants followed the attorney down the stairs and called him "the sorriest son of a bitch in Washington County, Arkansas." *Id.* 679 S.W.2d at 196. The deputy escorted the defendants before the judge who cited them for, and ultimately found them guilty of, contempt of court. The Supreme Court of Arkansas, with one justice dissenting, reversed the convictions because, as it said:

> We quash the contempt citations because the undisputed facts reveal that only words were spoken to the attorney at a time and place where they did not in any manner reflect upon the integrity of the court or

interfere to any degree with its proceedings. Petitioners did not even by innuendo attempt to influence the outcome of the proceedings or intimidate any witness or officer of the court.

679 S.W.2d at 197.

We do not share the view of the majority in *Edwards* that the conduct in that case was not intimidating. More important, the majority in *Edwards* did not even acknowledge the dissenter's discussion of the court's authority to protect litigants, jurors, witnesses and lawyers from intimidation which occurs in proximity to the courtroom.

*Ex Parte Arnold,* 503 S.W.2d 529 (Tex. Crim.App.1974), is similar to *Edwards.* The court held in *Arnold* that it was not a contempt of court to photograph an undercover government agent in the hallway of the courthouse because such did not constitute an interference with the administration of justice. As in *Edwards,* there was a dissent in which the judge who disagreed said: "A judge should have the authority to protect a witness who appears before him, at least while the witness is in the courthouse." 503 S.W.2d at 536.

Finally, in *United States v. Peterson,* 456 F.2d 1135 (10th Cir.1972), the court held that a government agent who accosted a defendant in the hallway of the courthouse following sentencing and told him he was going to "get him" was not guilty of contempt. *Id.* at 1137, 1139. The trial court had interpreted the remark as a criticism of the lenient sentence it had imposed, but the court of appeals disagreed, saying that the contempt power should be used sparingly. The case contains no discussion concerning the court's power to protect persons in attendance upon it, and it contains no discussion of the denigration of the authority of the court.

### THE BEHAVIOR WAS CONTUMACIOUS

Hirschfeld has some specific arguments as to why his conduct was not a contempt of court. He was convicted of *contumacious* behavior which lessened the dignity and authority of the court. He points out that the word "contumacious" means "obstinately resisting authority; insubordinate; disobedi-

ent." WEBSTER'S NEW WORLD DICTIONARY, SECOND COLLEGE EDITION 310 (1982). He says that the *dignity-and-authority standard* was meant to reach conduct which involves a resistance to authority and which lessens the dignity and authority of the court. This, he argues, requires a "fairly direct challenge" to the court's authority which cannot be allowed to pass if the judge is to maintain control of the proceedings.

We do not agree that the court's power is quite so narrow. At least one court which has considered the meaning of the word "contumacious" has defined it as follows:

> Contumacious conduct consists of verbal or non-verbal acts which:
>
> (1) embarrass or obstruct the court in its administration of justice or derogate from its authority or dignity;
>
> (2) bring the administration of justice into disrepute; or
>
> (3) constitute disobedience of a court order or judgment.

*People v. Ernest,* 188 Ill.App.3d 987, 136 Ill.Dec. 500, 501, 544 N.E.2d 1275, 1276 (1989). Hirschfeld's misconduct fits easily within the first two of these definitions. We also observe that the term "contumacious" is rather broadly applied in other decisions discussing contempt. For example, in *Owen v. City Court of the City of Tucson,* 123 Ariz. 267, 268, 599 P.2d 223, 224 (1979), supplying allegedly false information to the court was referred to in passing as "contumacious" conduct. In *United States v. Lumumba,* 794 F.2d 806, 811 (2d Cir.1986), the term was used to refer to insulting remarks addressed to the judge, as if "contumacious" were synonymous with "contemptuous." All of this is consistent with the fact that the adjective "contumacious" derives from the noun "contumacy," which WEBSTER'S notes is akin to the word "contumely," which means "haughty and contemptuous rudeness; insulting and humiliating treatment or language." WEBSTER'S NEW WORLD DICTIONARY, SECOND COL-

LEGE EDITION 310 (1982). Certainly, Hirschfeld's conduct fits the definition of "contumely."

Even if "contumacious" is more strictly defined, we believe that Hirschfeld's conduct fits within the spirit of its meaning. To use the courthouse as a "cock-pit" or "prize ring" as *Patterson* phrased it, is, in a very real sense, a resistance to authority because every person, and particularly every lawyer, is bound to know that no judge would authorize such use. So, too, every person, and particularly every lawyer, is bound to know that no judge would authorize one party to abuse another in the manner done in this case when such abuse occurs in a place where the judge would be likely to observe it and would have the immediate authority to order that it cease. While Hirschfeld did not violate an express order, at some point conduct violates a standard that all can assume the court has set for those who are in attendance upon the court. Our point is illustrated by the fact that Hirschfeld's conduct in this case has already been the subject of an order by the supreme court suspending him from the practice of law. *See In the Matter of A Member of the State Bar of Arizona,* No. SB–95–0033–D, Disciplinary Commission No. 95–0839 filed June 7, 1995. The supreme court, in the order granting the motion for interim suspension, while expressly declining to rule on the legal challenges to the finding of contempt which are the subject of this special action, found that Hirschfeld's conduct violated the Arizona Rules of Professional Conduct because, among other things, it constituted "conduct prejudicial to the administration of justice" within the proscription of Rule 8.4(d). In other words, the conduct violated a pre-set standard, the parameters of which attorneys are presumed to know.[1]

Finally, in this regard, and even if Hirschfeld is correct in his view that the word "contumacious" must be given a narrow

---

1. Hirschfeld knew that Judge Hall had allowed the mother to retain custody of the child pending the outcome of the hearing. His attempts to have the deputy arrest the mother were in direct defiance of the right the court had bestowed. This was certainly stubbornly disobedient behavior that lessened the authority of the court. There was some disagreement in the trial court as to whether this behavior could be included in the grounds for the contempt proceeding and since the trial judge did not rely squarely upon Hirschfeld's dealings with the deputies in finding that the contempt had been proven, we do not rest the affirmance on this conduct.

meaning, we believe that the term can be viewed as surplusage in the context of this case because the court has inherent powers, beyond any bestowed by statute or rule, to punish for contempt. Among such inherent powers is the power to maintain order. *See Owen,* 123 Ariz. at 268, 599 P.2d at 224; *McMilian v. Rennau,* 619 S.W.2d 848, 850 (Mo.App.1981). In *Ong Hing v. Thurston,* 101 Ariz. at 98, 416 P.2d at 422, our supreme court, without any reference to the word "contumacious," said that conduct which hinders, obstructs or embarrasses the court in the administration of justice, or which lessens the dignity and authority of the court constitutes a contempt of court.

## THE PETITIONER'S OTHER ARGUMENTS LACK MERIT

■ Hirschfeld argues that the "dignity and authority" language of Rule 33.1 is void for vagueness and is overbroad. He says that it fails to give him notice of what conduct is punishable, and because different judges have different standards of behavior, the rule lends itself to arbitrary and discriminatory enforcement. He cites no authority which directly supports him. With respect to the vagueness argument, we acknowledge that the court's power to protect persons in attendance upon it can be "pressed beyond reasonable limits." *Patterson,* 26 F. at 511. As we have already observed, however, everyone, especially every lawyer, can be expected to know that a judge would not tolerate this behavior in the vicinity of the courtroom, and, accordingly, we do not believe the language of the rule is vague.

■ With respect to the argument that the rule lends itself to arbitrary and discriminatory application, we observe that where contempt is concerned, the judge who cites for contempt is, in essence, exercising prosecutorial discretion. The fact that a prosecutor has discretion whether or not to bring a charge does not, in the absence of an abuse of that discretion, render the application of any criminal statute arbitrary or discriminatory. *State v. Murphy,* 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976).

Hirschfeld also argues that the invocation of the contempt power in circumstances like those presented in this case chills protected conduct. He says that in trying to ascertain the whereabouts of the child, he was advocating his client's interests as he had a right and duty to do. We agree with Hirschfeld that there is substantial doubt that a court can, consistent with the right to free speech, impose a criminal penalty on ill-mannered or oppressive communications by an attorney to an adversary when the communications occur outside court. But that is not this case. This case is about maintaining the peace in the hallway outside the courtroom and protecting persons who are actually in attendance on the court. Whatever chill spreads from this exercise of the court's power is constitutionally permissible.

Hirschfeld also argues that the dignity-and-authority standard exceeds the court's rule-making power because it goes beyond the governance of practice and procedure and because, having nothing to do with a court order or a hinderance to the administration of justice, its application to the facts of this case is unreasonable. His premise is that nothing more is involved in this case than incivility which occurred outside the court. The rationale of *Patterson* and the other cases we have cited, as well as the order of the supreme court suspending Hirschfeld from the practice of law, are the answer to this argument.

■ We do not agree with Hirschfeld's assertion that the sentence in this case was excessive or was the result of an abuse of discretion. The sentence was not disproportionate to Hirschfeld's misbehavior. Hirschfeld also argues that the sentence must be vacated because the sentencing proceeding was procedurally improper. He refers to the lack of a presentence report and the lack of a presentence hearing. With respect to the report, such was discretionary with the judge. *See* Ariz.R.Crim.P. 26.4(a). With respect to the hearing, the record shows that sentencing was postponed on one occasion at Hirschfeld's request and that he filed a memorandum relating to sentencing. On the day of sentencing, Hirschfeld's attorney advised the court that he was not going to call any

witnesses. The only concrete complaint Hirschfeld makes about the procedure is that he learned that the judge was considering a prior incident of contempt as an aggravating circumstance for the first time when the judge was in the process of passing sentence. The record shows, however, that before sentence was passed, the special prosecutor referred to this prior incident and asked the court to take it into consideration. Hirschfeld's own attorney addressed the matter in rebuttal. Hirschfeld received due process in the sentencing proceeding.

## CONSIDERATION OF POINTS RAISED BY THE DISSENT

The points raised by the dissent certainly merit consideration. The dissent says that Judge Ryan impermissibly incorporated in his findings the fact that Hirschfeld ignored Judge Hall's admonition to leave the mother alone. Although Hirschfeld cannot be guilty of having violated this express directive, a strong argument can be made for the proposition that Judge Ryan was, nonetheless, entitled to consider Judge Hall's admonition in ruling on whether Hirschfeld was guilty of contumacious conduct which lessened the dignity and authority of the court. Although a court cannot base a finding of contempt on conduct for which a respondent has not been cited, it may consider such behavior in deciding whether other conduct for which the respondent has been cited is contumacious. *Lumumba*, 794 F.2d at 810–11. Judge Hall's comment to Hirschfeld to leave the mother alone, even if not viewed as a direct order, certainly reinforced what Hirschfeld was bound to know anyway, i.e., that he was violating a standard of conduct that existed even in the absence of the court's admonition.

Even if we completely put aside the foregoing argument, we do not believe that Judge Ryan's reference to the admonition to "leave her alone" flaws his conclusion. First, Judge Ryan clearly recognized that Hirschfeld could not be found in contempt for violating a direct order of the court. Second, Judge Ryan articulated as his reason for his conclusion the very rationale of the *Patterson* decision—that the court has the power to protect persons in attendance on the court

from harassment when they are in the vicinity of the courtroom. If every reference to Judge Hall's remark is removed from Judge Ryan's findings, the conviction for contempt is supported, indeed compelled, by the evidence.

The dissent suggests that this case is not like *Patterson* because Hirschfeld's conduct occurred outside the courtroom and outside the presence of the judge. Other cases we have cited, *Tanner, Reeves, Emerson, Morgan* and *Goff,* all find that conduct similar to Hirschfeld's which occurred outside the courtroom and outside the presence of the judge will support a conviction for contempt.

## CONCLUSION

We understand that the power to punish for contempt should be used with caution. *See In the Matter of Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972); *Redman v. United States,* 77 F.2d 126, 127 (9th Cir.1935); *United States v. Peterson,* 456 F.2d 1135, 1139 (10th Cir.1972); *In the Matter of Nesbitt,* 345 A.2d 154, 155 (D.C.Ct. of App.1975). The use of the power was appropriate in this case.

The judgment of the trial court and sentence imposed are affirmed. The stay of execution of the sentence is vacated.

GERBER, J., concurs.

EHRLICH, Judge, concurring in part and dissenting in part.

I concur with the majority's acceptance of special-action jurisdiction. I respectfully disagree with its resolution of the substance of the case.

The majority concludes that Hirschfeld's uncivil behavior toward the mother of his client's child in the corridors of the Maricopa County Superior Court was criminally contemptible because it constituted "contumacious conduct which lessens the dignity and authority of the court." *See* Ariz.Rule Crim.P. ("Rule") 33.1. I disagree. Hirschfeld's actions clearly were intentionally offen-

sive, unprofessional[2] and opprobrious, but they were not, to my mind, contumacious. I take particular issue with the majority's declaration that, under the "inherent" contempt power of the court, the term "contumacious" is accorded a broad definition. To the contrary, because the power to proclaim a person to be in criminal contempt of court invokes the independent authority of the judicial branch of government, the magnitude of that declaration dictates that the definition of the word "contumacious" be confined to describe actions impugning the dignity and authority of the court itself.

Rule 33.1 invokes the inherent ability of the court to punish a violation of a court's "lawful writ, process, order or judgment," to punish "wilfully contumacious conduct which obstructs the administration of justice," or "wilfully contumacious conduct ... which lessens the dignity and authority of the court...." Hirschfeld was not charged with obstructing the administration of justice. Had he been found in criminal contempt of Judge Hall's directive to "leave [the mother] alone," this court likely would have affirmed with alacrity. But Hirschfeld's contempt was not based upon disobedience to an order of Judge Hall but upon behavior of Hirschfeld "which lessen[ed] the dignity and authority of the court." In this case, that is too weak a post to support a criminal contempt lintel. There is no better proof of this weakness than the trial court's pervasive incorporation of Hirschfeld's disregard for Judge Hall's leave-her-alone directive as support for its and, now, the majority's, conclusion that Hirschfeld denigrated the "dignity and authority" of the court.

The trial court's minute entry includes the following passages that crystalize the incorporative analysis in which it engaged.

The evidence clearly shows that Judge Hall asked—told Mr. Hirschfeld to leave the woman alone, and I understand and I realize that he is not being charged with willfully disobeying the order of Judge Hall, *but looking at all the activities involved here, Mr. Hirschfeld really just disregarded anything that Judge Hall said.* He went outside the chambers area of Judge Hall's court and other courts, began harassment, haranguing, and badgering.... [Emphasis added.]

\*　　\*　　\*　　\*　　\*　　\*

His actions lessened the dignity and authority of the court. *He disregarded the request of Judge Hall.* He harassed [the mother] to the point that she was in tears and upset and in fear, and I find that this shows beyond a reasonable doubt that he willfully engaged in contumacious conduct.... [Emphasis added.]

The tenor of these comments is marked by its repeated contextualization of Hirschfeld's actions as being in disregard for Judge Hall's order or directive. But Rule 33.1 is tripartite in nature. The significance of the divided nature of the rule is underscored in this case because of Judge Hall's repeated avowals that Hirschfeld's conduct was neither an obstruction of the administration of justice nor a disobeyance of an order. Accordingly, Hirschfeld's actions must be analyzed only in the context of the "dignity and authority of the court" because that is all with which Judge Hall charged him. Therefore, to be guilty of criminal contempt, Hirschfeld had to engage in conduct diminishing the dignity and authority of the court but not causing an obstruction to the administration of justice nor violating a court order. The words "dignity" and "authority" are joined by the conjunctive "and."[3]

---

**2.** *See* Rule 42, Rules of the (Arizona) Supreme Court, Ethical Rule 4.4: "Respect for Rights of Third Persons. In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

**3.** The majority cites *United States v. Lumumba,* 794 F.2d 806, 810–11 (2d Cir.1986), as favoring the trial court's incorporative comments. How-

ever, that case, as well as the cases cited therein, permitted consideration of uncited conduct in the determination of whether cited conduct was contumacious because the uncited acts involved direct criminal contempt wherein the authority of the court was unquestionably challenged. Indeed, the uncited conduct in *Lumumba,* entailing "mocking, condescending actions and querulous, acidic, baiting tone of voice," *id.* at 811 n. 2, and, in the other cases, "insulting remarks, scornful tone of voice and disrespect," *United States v. Martin–Trigona,* 759 F.2d 1017, 1026 (2d Cir.

As the majority notes, "'contumacious' means 'obstinately resisting authority; insubordinate; disobedient,'" *citing Webster's New World Dictionary,* Second College Edition, 1982. The *Random House Dictionary of the English Language, Unabridged,* 443 (2d ed. 1987) concurs, adding only "stubbornly perverse or rebellious; wilfully and obstinately disobedient." The *Oxford English Dictionary* (1933, 1971) provides "1. contemning and obstinately resisting authority; stubbornly perverse, insubordinate, rebellious. ... 2. Law. Wilfully disobedient to the summons or order of a court." Based upon these definitions, reflective of the history of the contempt power, I believe that Hirschfeld correctly states that contumacious conduct requires a direct and immediate challenge to the court's authority which could not be allowed to pass if the court were to maintain control of its proceedings. To interpret the term in any other manner, I fear, would be to improperly extend the contempt power, a power which the United States Supreme Court has consistently noted "uniquely is 'liable to abuse.'" *International Union, UMWA v. Bagwell,* — U.S. ——, ——, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994) (*citing Bloom v. Illinois,* 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968), *quoting Ex parte Terry,* 128 U.S. 289, 313, 9 S.Ct. 77, 83, 32 L.Ed. 405 (1888)).[4]

Hirschfeld's words and actions were directed toward the mother of his client's child; they were intended to cause her to tell him the location of the child who was the focus of an apparently bitter custody dispute. There is nothing in the record, again in the absence of Judge Hall's directive to "leave her alone," indicating that Hirschfeld intended his ac-

tions as a stubborn rebellion or obstinate resistance to the authority of the court.

The majority counters this by reference to *United States v. Patterson,* 26 F. 509, 511 (Tenn.Cir.1886), wherein the court held that fighting in the courtroom, even during a recess of the court, was an attack upon the court's dignity. The majority simply stretches the reasoning of the case to cover those areas "adjacent to" the courtroom and ignores the phrase in Rule 33.1 "and authority of the court." Additionally, the majority's claim that, "at some point, conduct violates a standard that all can assume the court has set for those who are in attendance upon the court" is simply too tenuous.[5] Certainly, as in *Patterson,* fighting in the courtroom can be assumed to be violative conduct. But that lies as much in the fact that fighting in any public arena generally is forbidden. The use of mere words, or even words accompanied by pursuit of the person to whom they are being addressed, outside of the courtroom and outside of the hearing of the judge, does not easily square with such an assumption. A lawyer other than Hirschfeld, a mother with a different personality, a mother represented by counsel, all are variables that could have rendered the actions in the underlying case simply another interaction in the courthouse and not the crux of a criminal contempt proceeding. To hold this particular lawyer liable for criminal contempt for his uncivil behavior, without connecting that conduct to a more direct challenge to the court's authority, constitutes an abuse of the contempt power and a rejection of the principle that the contempt power should be used with caution. *E.g., In re Matter of Little,* 404

1985), or disruptive "outbursts" during trial, *In re Dellinger,* 461 F.2d 389, 401 (7th Cir.1972); *United States v. Seale,* 461 F.2d 345, 371 (7th Cir.1972), were components of the contemnors' cited challenges to the courts' authority.

4. The majority's attempt to finesse the definitional problems it faces with the term "contumacious" by likening it to the word "contumely" is precisely the overextension with which I am concerned. The nouns "contumacy," from which "contumacious" is derived, and "contumely," while linguistically related, each bear a distinct definition. Had the drafters of Rule 33.1 intended to punish merely "haughty and contemptuous

rudeness," or "insulting and humiliating treatment or language" they would have used the phrase "contumelious conduct," not "contumacious conduct."

5. Equally gossamer, and of questionable relevance, is the majority's illustration of Hirschfeld's violation of the "assumed" standard of conduct. The supreme court made it clear in its order of June 7, 1995, that its "conclusion is reached apart from the resolution of the legal challenges advanced by [Hirschfeld] to the trial court's finding of criminal contempt and the sentence imposed."

U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1973).